**In re James Ross HARTLEY, Indiv. and dba Hartley Trucking and Sharon Lee Hartley, Debtors.**

**Bankruptcy No. 81–01855.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Feb. 24, 1984.

Quentin M. Derryberry, II, Wapakoneta, Ohio, Trustee in Bankruptcy.

Melanie Rovner Cohen, Antonow & Fink, Chicago, Ill., for trustee.

Thomas D. Drake, William E. Clark, Findlay, Ohio, for The Peoples Banking Co. of McComb.

Reginald S. Jackson, Jr., Steven R. Smith, Toledo, Ohio, for The Toledo Trust Co.

Theodore M. Rowen, Kenneth J. White, Andrew E. Anderson, Chris E. Steiner, Toledo, Ohio, for St. Joseph Bank & Trust Co.

Paul Burson, Carey, Ohio (creditor).

C. Richard Gottfried, Upper Sandusky, Ohio (creditor).

Richard L. Ettensohn, Schaumburg, Ill., for Union Oil Co. of California.

## MEMORANDUM AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard on February 3, 1984 upon the "Trustee's Application to Obtain Secured Credit pursuant

to 11 U.S.C. § 364 and to Pay Additional Retainer" and upon objections thereto filed by The Peoples Banking Company of McComb, Ohio, The Toledo Trust Company, and the St. Joseph Bank and Trust Company. Considering the motion, the written and oral objections thereto, and the evidence adduced at the hearing, the court concludes that the relief requested should be granted.

## PROCEDURAL POSTURE

On November 14, 1983 the Trustee filed the present motion for authority to obtain secured credit pursuant to 11 U.S.C. § 364(c) and to pay an additional retainer of $25,000.00 to the law firm of Antonow & Fink, his duly appointed counsel retained upon the Trustee's application and order of this Court dated May 27, 1983. The court ordered the Trustee to send notice of his motion to all creditors and parties in interest and to further notify them that they had 20 days from the date thereof to file written objections and to request a hearing. Pursuant to such order, notice was mailed by the Trustee on November 21, 1983 and three creditors of the estate, The Peoples Banking Company of McComb, Ohio (Peoples Bank), The Toledo Trust Company (Toledo Trust), and the St. Joseph Bank and Trust Company of South Bend, Indiana (St. Joseph Bank), filed timely objections.

## FACTUAL BACKGROUND

On September 8, 1981 the debtors, James Ross Hartley and Sharon Lee Hartley, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Pursuant to order of the court, Quentin M. Derryberry, II, was then appointed trustee of the estate.

In December of 1981, the Trustee invited representatives of several of the creditors of the estate to attend a meeting in his office. Among those parties participating in the meeting were representatives of the Union Oil Company of California (Union Oil) and the Peoples Bank. At the meeting, the Trustee discussed, among other things, the prospects of recovery for unsecured creditors of the estate. In the view of the Trustee, considering the assets of the estate and the scheduled claims, the only substantial prospects for recovery by the creditors lay in the Trustee's pursuit of certain litigation on behalf of the estate. In order to pursue such litigation, the Trustee solicited funds from the parties in attendance. As a result of the meeting, Union Oil offered funds to the Trustee on terms he found unacceptable and rejected.

On June 4, 1982, after a hearing on notice to all creditors, the court entered an "Order on Application of Trustee for Instructions and Advice." The Trustee had requested guidance from the court respecting the propriety of his accepting $13,880.00 proffered from certain creditors of the estate for purposes of the investigation and possible pursuit of certain litigation on behalf of the estate. There being no objections to such application, the court finding that the grant of the application would be in the best interests of the estate and its creditors, the court authorized the Trustee to accept the funds offered and additional sums on the following conditions:

1. The sums shall be received by the Trustee as unsecured borrowings under § 364 of the Bankruptcy Code (11 U.S.C. § 364) and shall be allowable as an administrative expense under § 503(b)(1) of the Code (11 U.S.C. § 503(b)(1).

2. The funds received hereunder shall become assets of the estate and be deposited by the Trustee in a separate account, and shall not be co-mingled with other monies of the estate.

3. The Trustee shall promptly report the receipt of additional funds to the Court, furnishing the name of the contributor, the amount contributed and the date of receipt.

4. The funds may be used only upon application to and prior Order of this Court.

5. The funds received hereunder shall be under the exclusive control of the Trustee and not of the creditor or creditors contributing the same, subject only to Orders and supervision of this Court.

6. The funds received hereunder shall be used for the purpose of investigating into possible fraudulent conveyances, preferential transfers and/or other actions seeking the recovery of assets for the benefit of the estate and the creditors.

7. The trustee shall account to the Court for all funds received hereunder heretofore or hereafter, which accounts shall be available for inspection by creditors.

The Trustee never took possession or control of the $13,880.00 proffered by the creditors under the June 4, 1982 order. These funds were initially and apparently remain under the control of one Merle C. Weber, an independent investigator with whom the Trustee is sharing information relating to the affairs of the debtors. According to the testimony of the Trustee, the $13,880.00 submitted to him under the June 4, 1982 order remains unused and intact in a banking institution in Phoenix, Arizona. The Trustee has filed an adversary proceeding, Case No. 84–0003, against Mr. Weber seeking a turnover of the money.

In May of 1983, with the approval of the court, the Trustee paid a $10,000.00 retainer to the law firm of Antonow & Fink, a "professional person" employed by him pursuant to § 327 of the Bankruptcy Code. The general terms of the retainer were that Antonow & Fink perform services and advise the Trustee in pursuing his statutory duties. Pursuant to the order permitting the payment of the retainer, the funds to pay the retainer were to come from the proceeds of the sale of certain stock in the hands of the Trustee on which the Peoples Bank claimed an interest. In fact, however, the Trustee paid the retainer from other estate funds.

In approximately June or July of 1983, the Trustee convened a meeting in Chicago, Illinois at the offices of Antonow & Fink. Representatives of Union Oil, an unsecured creditor of the Hartley estate for approximately $910,000.00, attended the meeting and were given draft copies of certain complaints the Trustee eventually filed in this court and the United States District Court for the Northern District of Illinois. Upon review of the content of these complaints, Union Oil agreed to lend the Trustee the $25,000.00 in question subject to the approval of this Court.

The Trustee entered into no written or oral agreement with Union Oil regarding the extension of credit. Also, there were no conditions imposed on the proffered money, although the Trustee did agree to provide Union Oil with a periodic assessment of the progress of the litigation.

Union Oil has not attempted to influence the Trustee in any aspect of the litigation, and expressed no intention of doing so in the future. There was no discussion between the Trustee and Union Oil regarding the compromise of any claim the Trustee might have against Union Oil.

Union Oil's expressed motivation in lending the funds was its belief, based upon the evaluation of several of its own in-house counsel, that the Trustee may have some viable claim that would result in recovery of funds for the estate and itself as an unsecured creditor. In particular, the representative of Union Oil testified that they felt that a certain preference action against the Peoples Bank had a significant probability of success. Union Oil viewed the $25,000.00 as "seed money" in that, if the preference action against Peoples Bank succeeded, adequate funding for the much broader litigation initiated or anticipated by the Trustee would be provided.

The Trustee subsequently filed three adversary proceedings against the objectors in this Court: Case No. 83–0748 against the Peoples Bank; Case No. 83–0749 against the St. Joseph Bank; and Case No. 83–0750 against Toledo Trust. Also, the Trustee filed a complaint in the United States District Court for the Northern District of Illinois against Milton Ratner, et al. According to the motion to obtain credit, the complaints "contain multiple counts setting forth causes of action under both state and federal law." The $25,000.00 borrowing is being sought to fund, in part, the prosecution of these complaints.

There presently exists no substantial source of funding for the litigation commenced by the Trustee. Although through liquidation of property of the estate the Trustee presently has in his possession approximately $600,000.00 in funds, less than $10,000.00 of this amount is held free from any claims of creditors or parties in interest. Furthermore, the Trustee has already received anticipated administrative claims in excess of the amount of funds presently available.

The Trustee estimates that conduct of the litigation previously mentioned will cost $150,000.00–$200,000.00. The only source of funding for this litigation readily available is the $25,000.00 offered by Union Oil. The Trustee anticipates that at least part of the funding needed to complete the litigation will be derived from his prevailing on a preference claim against the Peoples Bank asserted as a claim in one of the cases filed in this Court.

The Trustee has not attempted to employ counsel to pursue the litigation in question on a contingent fee basis. Two attorneys previously employed by the Trustee in connection with this litigation have ceased representation of the Trustee, at least in part, since there appeared to be inadequate funding to pursue the litigation available to the estate. Antonow & Fink, counsel for whom the retainer is sought, has specifically rejected, for the present time, any suggestion that they would take the case on a contingent fee basis.

The claim of the general unsecured creditors of the estate total approximately $3,500,000.00. In addition, there have been docketed in the court's claims register priority wage claims in excess of $110,000.00 and priority tax claims in excess of $650,000.00. The Trustee estimates that absent recovery in the litigation for which the funding is sought, there will be no recovery in this case for the general unsecured creditors.

No creditors or parties in interest have objected to the proposed borrowing other than the Peoples Bank, Toledo Trust, and the St. Joseph Bank. Several creditors who previously contributed to the funds collected in the June 4, 1982 order on the application for instructions and advice filed a written approval and/or appeared at the hearing and made statements in support of the Trustee's application.

## DISCUSSION

At the commencement of the hearing on the Trustee's motion the court granted the Trustee's request that his motion be considered under § 364(b) instead of § 364(c) as originally filed.

Section 364(b) of the Bankruptcy Code, 11 U.S.C. § 364(b), provides as follows:

The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

The objectors have raised a multitude of grounds objecting to the motion of the trustee. Among other reasons, the objectors assert that the following circumstances justify the court's denial of the Trustee's motion to obtain credit: that the borrowing is not necessary to the operation of the debtor's business; that the borrowing is not necessary to preserve assets of the estate; that the Trustee has failed to show some probable benefit the borrowing would have for the estate; that the borrowing would result in a wasteful depletion of estate assets; that the Trustee has a conflict of interest with Union Oil which would preclude his acceptance of the loan; that the Trustee failed to provide a proper accounting of the source of the previous funds paid to counsel; that the Trustee has failed to properly account for the $13,880.00 previously entrusted to him under the June 4, 1982 order; that the Trustee has not first sought to obtain counsel on a contingent fee basis; that receipt of the funds should be conditioned upon Union Oil subordinating itself to the administrative priority given the previous borrowing; that the Trustee has failed to diligently perform his duties in this case and has entered into questionable financial dealings; that the

additional borrowing will not sufficiently fund the litigation initiated by the Trustee; and that the borrowing is unnecessary since the Trustee is competent to prosecute preference claims himself. For the following reasons, the court finds that these objections are not well taken and, in addition, specifically approves the borrowing as being in the best interests of the creditors and the estate.

■ First, there is no requirement in § 364(b) that the borrowing be conditioned on the trustee's operation of the business of the debtor. In this regard, the objectors have erroneously applied a condition to obtaining credit under § 364(a) to the instant motion under § 364(b). Section 364(a) provides:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

Thus, when the business of the debtor is authorized to be operated, whether by a Chapter 7 trustee under § 721, by a debtor in possession under § 1108, or by a chapter 13 debtor under § 1304, unless the court orders otherwise, in each case the respective entity may incur unsecured credit in the ordinary course of business allowable under § 503(b)(1) as an administrative expense. No similar limitation is mentioned in § 364(b) and, as the legislative history makes clear, that section permits a chapter 7 trustee to obtain credit in a liquidation case:

> Subsection (b) permits the court to authorize the trustee to obtain unsecured credit and incur unsecured debts other than in the ordinary course of business, such as in order to wind up a liquidation case, or to obtain a substantial loan in an operating case. Debt incurred under this subsection is allowable as an administrative expense under section 503(b)(1).

House Report No. 95–595, 95th Cong. 1st Sess. 346–47 (1977); Senate Report No. 95– 989, 95th Cong., 2d Sess. 57 (1978) U.S. Code Cong. & Admin.News 1978, pp. 5787, 5843, 6303. The fact that the Trustee is not operating the business of the debtor, thus, is no bar to the motion to obtain credit in this case.

■ The assertions that the court should deny the motion to obtain credit since the borrowing is unnecessary to preserve assets of the estate, that there has been no showing of probable benefit to the estate, and that it would result in a wasteful depletion of assets of the estate are also rejected. The rationale for each of these arguments is the same: it assumes or asks the court to determine that the litigation commenced by the Trustee is not meritorious. For example, it is argued that the borrowing is not necessary to preserve assets of the estate because the Trustee lacks standing to assert the claims or that they fail to state a claim upon which relief can be granted or that the Trustee has asserted or shown no sufficient facts to state a lawful claim. Similarly, the claim that there must be a showing of probable benefit to the estate questions the chance of success on the merits of the claim. Finally, the depletion of assets argument assumes that, since the claims are insufficient, the money spent in litigation will yield no benefit to the estate. The argument that the court should make some predetermination of viability of a claim the trustee might assert was rejected, however, in related litigation in this matter, see *Toledo Trust Co. v. Derryberry (In re Hartley)*, 36 B.R. 594 (1983), and is similarly rejected here. For the reasons stated in that opinion, then, the court rejects these arguments which, in effect, challenge the sufficiency of the claims asserted.

■ With respect to the claim that the Trustee has a conflict of interest with the Union Oil Company which should preclude his acceptance of the proffered funds, it is first asserted that Union Oil has attached unacceptable express or implied conditions to its loan which might exert unacceptable control over the Trustee in the exercise of his fiduciary duties. No evidence to sub-

stantiate this claim, however, was adduced at the hearing. It appears that Union Oil may have sought to impose conditions on the funds that were first solicited at the December 1981 meeting. These terms were found unacceptable to the Trustee and no funds were lent on these terms. The present loan offer, however, involves no similar conditions, express or implied. In addition, the court specifically rejects the contention that the Trustee's agreement to provide status reports is such a condition since the Trustee is already under a duty, pursuant to § 704(6) of the Code, to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

The objectors also assert a conflict between the Trustee and Union Oil on the grounds that one of the claims made in the three adversary proceedings against objectors may also be asserted against Union Oil. The implication, of course, is that the loan is the *quid pro quo* for the Trustee's not asserting a similar claim against Union Oil. As indicated previously, however, no agreements have been made between the Trustee and Union Oil and, specifically, the Trustee has made no agreements not to pursue any claims against Union Oil or any other creditor. Furthermore, on the basis of the evidence submitted, the court cannot conclude that the Trustee does, in fact, have an identical claim against Union Oil. As indicated previously, the court cannot and should not undertake the complex task of testing the nature and viability of the litigation commenced by the Trustee, which has been characterized as containing "multiple counts setting forth causes of action under both state and federal law." Such an endeavor is beyond the scope of this proceeding. Thus, there are no grounds for upholding the claim of a conflict of interest between Union Oil and the Trustee.

The objectors next maintain that the Trustee's improper handling of certain estate funds is grounds for denial of the motion to obtain credit. The Peoples Bank, in particular, vehemently protests the present borrowing and application to pay

an additional retainer since, in its opinion, the Trustee acted improperly in paying the initial $10,000.00 retainer to Antonow & Fink out of funds other than those he was specifically authorized to pay it from.

It appears on May 27, 1983 this Court entered an order granting the Trustee's application to pay his counsel an initial $10,000.00 retainer out of the proceeds of the sale of 6,000 shares of stock of The Peoples Bank of Carey. The Peoples Bank claimed an interest in the stock and the proceeds of sale but specifically consented to the aforesaid use of the funds conditioned on reimbursement from any recovery. Also, the Peoples Bank claims that the money was advanced for the purpose of pursuing certain litigation against Milton D. Ratner, et al., in The United States District Court for the Northern District of Illinois and that the Trustee agreed that the money Peoples Bank contributed would not be used to pursue any claim against the Peoples Bank.

■ Despite the confusion created by the Trustee's reluctant and belated disclosure of the source of the funds used to pay the initial retainer, considering all the circumstances, the court cannot conclude that the Trustee has exhibited such a degree of irresponsibility as to preclude the obtaining of credit. The fact that the initial retainer was paid other than in accordance with the stipulation reached with Peoples Bank is, to an extent, immaterial. The Court initially authorized the employment of counsel and authorized the payment of a retainer. The money was paid from general estate funds but not from funds on which the Peoples Bank claimed an interest. The source of the funds seems significant, if at all, only to the Peoples Bank who have labored under the mistaken impression that someone, other than itself, would be defending the litigation initiated by the Trustee. The evidence, however, failed to substantiate the Peoples Bank's contention that it had an agreement with the Trustee regarding the use of the funds. Such an agreement, if it was reached, would constitute a breach of

the Trustee's duty, as representative of the estate under § 323(a) of the Code, to promote the best interests of creditors and the estate. While the Trustee may have been less than forthright in disclosing to the Peoples Bank the scope of the litigation contemplated through use of the funds, the Court can infer no duty of the Trustee to do so.

■ The objectors also raise the Trustee's failure to account for $13,880.00 as grounds for denial of the borrowing. This sum was to be received by the Trustee as unsecured borrowings under § 364(b) of the Code in accordance with the "Order on Application of Trustee for Instructions and Advice" entered June 4, 1982. The order further provided that the funds were to be under the exclusive control of the Trustee and that he should account for all funds received. At the hearing, the Trustee admitted he never took possession of the funds which initially were under the control of Merle C. Weber. At present, it is the Trustee's belief that the funds are intact in a bank account in Phoenix, Arizona. The Trustee has filed a complaint against Mr. Weber for turnover of the funds.

This fact, along with various other facts and assertions illicited at the hearing relating to certain acts of misfeasance or malfeasance allegedly committed by the Trustee, are more directly relevant to the question whether there is adequate "cause", under § 324 of the Code, for removal of the Trustee. The evidence adduced at hearing showed without question that the funds were necessary to continuation of the litigation in question. Also, it was shown at the hearing that, absent a recovery in the litigation, there are no funds in this estate for distribution to general unsecured creditors having claims in excess of $3,500,-000.00. Even if there is sufficient cause for removal of the Trustee, in this Court's opinion, the borrowing and payment of the retainer should proceed since, regardless of whether the present Trustee continues or a successor is appointed or elected, the litigation should continue, in the trustee's discretion, for the benefit of all the creditors.

Thus, notwithstanding the Trustee's handling of the funds under the June 4, 1982 order, or any other facts or assertions dealing with acts of misfeasance or malfeasance by the Trustee, the borrowing should be permitted in this case.

Finally, objectors variously argue that the borrowing should not be permitted since the Trustee should have first sought to obtain counsel on a contingency fee basis; that, in any event, even permitting the borrowing, there is insufficient funding to complete the litigation; and that the borrowing is unnecessary since the Trustee is competent, as a general matter, to pursue preference actions without the assistance of counsel. Each of these objections, in turn, are not well taken in this case.

■ Section 328(a) of the Code provides that "[t]he trustee ..., with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." Furthermore, pursuant to § 102(3) of the Code, the word "including" is "not limiting." Thus, under the Code, there is no requirement that the Trustee first seek employment of counsel on a contingency fee basis and, furthermore, the Court has already given its approval to payment of a retainer in this case.

■ The objection that there may be insufficient funds in the case to complete the litigation is also not sustained. At the hearing, the Trustee estimated that it would take approximately $150,000.00–$200,000.00 in attorney's fees to prosecute all the claims asserted to conclusion. There are not sufficient estate funds, at present, to complete the litigation necessitating the present and past solicitation of funds from creditors. The Trustee, however, estimates that the additional funds needed might come from his recovery on a preference claim against the Peoples Bank. Also, it is possible that additional funds may be solicited from creditors. In sum, possible funding for the litigation exists so that, even if this were sufficient grounds

for objection, it should not preclude the borrowing in this case.

 The objectors assert that the borrowing should not be permitted since the Trustee, as a general matter, is competent to prosecute a preference action. The objectors have failed to show, however, that the litigation, characterized by the Trustee as containing multiple claims under both federal and state law, consists only of a simple preference action. This objection too is rejected.

 Last of all, there is no requirement in § 364(b) that Union Oil subordinate itself to the priority already given the previous lenders. Indeed, it appears that, but for the additional funding offered by Union Oil, there would be no chance of any recovery for these or any other unsecured creditors.

In conclusion, considering all the objections, whether or not specifically discussed herein, the court has determined that it would be in the best interests of all the creditors and the estate if the borrowing in question were permitted and the Trustee given authorization to pay the additional retainer. It is therefore,

ORDERED that the Trustee be authorized to accept the $25,000.00 offered by Union Oil as additional borrowings under this Court's order of June 4, 1982. It is further,

ORDERED that the Trustee be authorized to pay this money to Antonow & Fink as an additional retainer. It is further,

ORDERED that the $25,000.00 check be endorsed by the Trustee and remitted directly to Antonow & Fink without being deposited in any bank or otherwise negotiated. It is further,

ORDERED that Antonow & Fink certify to the Court receipt of such check immediately upon its receipt. It is further,

ORDERED that, notwithstanding receipt of such retainer, the court will reserve its ruling upon the compensability of any services performed by Antonow & Fink pursuant to § 330 of the Code pending application to the court and "notice and a hearing."