### In re GLORIA MANUFACTURING CORP., Debtor.

### David L. GOODMAN, Appellant,

v.

### NATIONAL LABOR RELATIONS BOARD, Appellee.

Bankruptcy No. 81–00596–NN.
Civ. A. No. 84–33–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

May 4, 1984.

---

Erwin B. Nachman, Newport News, Va., for appellant.

Mark M. Carissimi, Baltimore, Md., for appellee.

## OPINION AND ORDER

KELLAM, District Judge.

The issue before the court in this appeal is whether funds advanced by David L. Goodman (David) to or for bankrupt should be allowed as an administrative expense in this bankruptcy action.

### I.

The facts are not in dispute. Gloria Manufacturing Corporation (Gloria) was engaged in the manufacture of ladies' and children's apparel with its principal place of business in Newport News, Virginia. On December 4, 1981, Gloria filed a petition in bankruptcy for relief pursuant to Chapter 11. It remained in possession of its assets and property as a debtor-in-possession until May 28, 1982, when Edward G. Grant was appointed Trustee.

Gloria Goodman, with her husband, Walter, owned the capital stock of the company. She had been an officer of the company and was the real operating head during the period in question.

On February 17, 1983, the Bankruptcy Court converted the Chapter 11 case into one under Chapter 7 and directed liquidation of the assets.

On or about November 5, 1982, Gloria Goodman, who was the person in charge of the operation of the company, determined she did not have sufficient funds in hand to meet the weekly payroll of the employees

of Gloria.[1] Expected collections from sales had not been received. She requested her son, David, to lend or advance the company enough money to make that payroll. Some $13,271.00 was advanced by David, which, when added to the funds on hand, was sufficient to meet the payroll for that week. David had been assured the funds would be returned in a few days, and as soon as collections were made. Two weeks later, November 26, 1982, a similar situation arose, and a request was again made to David for $15,000.00. Non-interest bearing notes were given as the sums were advanced. Unfortunately, the funds were not promptly repaid. The parties testified that interest was not provided for because it was expected the funds would be promptly repaid.[2] As to each instance, the uncontradicted testimony of Gloria Goodman established the immediate need to obtain the funds quickly to meet the payroll due the following day. She said that had she not met the payroll, the employees would have left the job and the plant would have been shut down.

On two subsequent occasions similar situations arose, and funds were advanced or obtained by the Trustee in the amount of $46,479.45 to meet the payrolls. The advances by the Trustee have been determined by the Bankruptcy Court, to be repaid as administrative expenses.

David Goodman filed an application in the bankruptcy action to have the sums advanced by him declared to be administrative expenses advanced to meet payrolls in order to keep the company in operation. Objection to the allowance was filed. Upon hearing, the Bankruptcy Court declined to declare the sums as administrative expenses. The advances or loans by David were without prior approval of the Bankruptcy court or notice to creditors.[3] The objector asserts the loans were outside of the ordinary course of business and therefore not allowable as administrative expenses; that because David is an "insider," the funds should be treated as a contribution to capital.

## II.

In dealing with the first objection raised by the National Labor Relations Board and International Ladies Garment Workers Union; i.e., that the loans or advances had not been previously authorized or ordered by the bankruptcy judge, the court said it did not find such contention as "that a substantial objection," [Tr. of Proceedings p. 39) as the court had dealt with the same issue in connection with a loan or advance made by or to the Trustee. The Bankruptcy Court found that the loans were an "emergency situation," and that it "would not defeat the claim on that ground." *Id.* The court further found that the funds were loaned in good faith, and said that if it could decide the issue on an equitable basis, it would find the advances were administrative expenses. The court sustained the objection on the ground that the law required it. In sustaining the objection, the court remarked "it is somewhat of an injustice, because I think Mr. Goodman loaned this in good faith," and "if I could decide it equitably, I would do so in his favor." (Tr. of Proceedings, P. 41).

## III.

■ Gloria was, pursuant to the provisions of Chapter XI of the Bankruptcy Act, a debtor in possession, operating the business pending the filing of a plan of reorganization or until the appointment of a Trustee. Pursuant to 11 U.S.C. § 1107, with certain exceptions not applicable here, the debtor-in-possession has the same powers and duties as a Trustee. *Matter of Hughes*, 704 F.2d 820 (5th Cir.1983); *see*

---

**1.** Employees were paid semi-weekly, with one-half of the employees being paid one week and the other one-half the next week.

**2.** When the $15,000.00 was advanced, David said that would be the last sum he would advance.

**3.** The uncontradicted evidence establishes there was not time to give notice or acquire approval from the court.

*also Wolf v. Weinstein,* 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). Under Bankruptcy Rule 11–23, the court may authorize the Trustee or debtor-in-possession to conduct the business or manage the property for the best interest of the estate. A Trustee was not appointed in this case until May 28, 1982. Thereafter, the operation of the business continued under the Trustee and, much the same as before, with Gloria Goodman in charge of the actual operation.

 Whether the business here was carried on by the debtor-in-charge or a Trustee, there was authority to preserve, protect and operate it, "and this carried with it the right to incur such obligations as might be necessary for the purpose of carrying out the court's orders in conduct of ordinary course of corporation's business." (citations omitted) *In re J.C. Groendyke Co.,* 131 F.2d 573, 574 (7th Cir.1942). The debtor-in-charge and the Trustee, during the time of their respective service, each had the authority to incur obligations for materials, supplies and services, and since each had such authority, it "makes no difference whether the obligation therefor runs to the person who furnished the supplies, materials and services, or to someone who advanced the money to the corporation to pay therefor," *In re J.C. Groendyke Co., supra,* 131 F.2d at 574, provided, of course such materials, supplies and services were furnished in good faith and were received by the corporation and the price therefor was reasonable and fair, and, further, were necessary for the purpose of carrying on the business and carrying out the court's order. *In re J.C. Groendyke Co., supra,* under circumstances similar to the case at bar, the court held that "the corporation was not required to obtain in advance an order of the court to authorize it to accept the loan of funds advanced."

Here, the bankruptcy judge found that the actions of all involved were in "good faith" and that his decision was "somewhat of an injustice."

 What seemed to disturb the bankruptcy judge was that David, a son of Gloria Goodman, was an "insider." Under 11 U.S.C. § 101(25)(B)(vi), where the debtor is a corporation, an insider is a relative of a director, officer or person in control of the debtor. David is clearly a relative as defined in 11 U.S.C. § 101(34). Under such circumstances, the court must give close scrutiny to dealings between an insider and the corporation. However, there is no *per se* rule prohibiting a claim of an insider from being classified as an administrative expense, nor has the court been cited to any case so holding. Close scrutiny to dealings does not require automatic denial. A fiduciary or an insider may not enrich himself by breach of his trust, but it "is not mere existence of an opportunity to do wrong that brings the rule into play; it is the unconscionable use of the opportunity afforded by the domination to advantage itself at the injury (of others)—that deprives the wrongdoer of the fruits of his wrong." *Comstock v. Group of Institutional Investors,* 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911 (1948), *rehearing denied,* 335 U.S. 837, 69 S.Ct. 12, 93 L.Ed. 389.

Here, Gloria was in immediate need of funds to meet its weekly payroll. It had no source of funds except from David. Time was of the essence. Without the funds, it was asserted the manufacturing and business would cease. Had funds from sales made by Gloria been paid in, as had been expected, the advance would not have been necessary. The findings of the bankruptcy judge and the uncontradicted evidence establish beyond question that David acted in good faith, and that the advance was solely for the benefit of Gloria. Not even interest on the advance was claimed. David's claim is "the outgrowth of (a) ... legitimate good faith business transaction, neither in design or effect producing injury to the objectors (petitioner) or the interest for which it (he) speaks." *Comstock, supra,* 335 U.S. at 229, 68 S.Ct. at 1463. The issue and facts in the case *sub judice* are quite similar to the issue and facts in *Comstock, supra* and *In re J.C. Groendyke Co., supra.*

Giving close scrutiny to the facts of this case, as the court should do, it is clear David and his mother acted in total good faith and with due regard to their respective obligations and responsibilities, legal and equitable to Gloria Manufacturing and its creditors, that the actions were beneficial to Gloria, objectors and all debtors, and that to deny the advance as administrative expenses would unjustly enrich the creditors. The Trustee obtained other advances—also without prior permission of the bankruptcy court—and under similar circumstances. Those advances were declared as part of administrative expenses, and "logic and consistency would certainly suggest that those who performed similar tasks and incur like obligations to the creditors and shareholders should not be treated differently..." *Wolf v. Weinstein, supra,* 372 U.S. at 650, 83 S.Ct. at 980. The unsecured credit was obtained in the ordinary course of business and allowable as an administrative expense as provided for in 11 U.S.C. § 364(a).

Objectors suggest that David has an interest or connection with the purchaser of the assets of Gloria when they were sold by the bankruptcy court, supposedly to suggest this was a reason for the advance of the funds by David. The funds were advanced by David in November 1982. The business was then being operated by the Trustee under Chapter XI. The operation under Chapter XI continued until February 17, 1983, when the bankruptcy court, on its own motion, converted the case to a Chapter 7 action and directed liquidation. The sale of the assets was not approved until June 1983. To suggest David advanced the money because he knew the court would subsequently convert the case to a Chapter 7 bankruptcy in February 1983, and approve a sale of the assets in June 1983, would suggest he was clairvoyant. Even if he could have anticipated such a conversion, of what benefit would it have been to him to have advanced the funds in November 1982. The fact that he may have subsequently obtained some interest in the assets of the company suggests nothing improper.

The action of the bankruptcy court in disallowing the claim as an administrative expense is REVERSED and the said claim is declared allowable as an administrative expense of the bankrupt.