In re C.E.N., INC., Debtor.

Bankruptcy No. 285–00160.

United States Bankruptcy Court,
D. Maine.

April 7, 1988.

Dennis Bezanson, So. Portland, Me., trustee.

Maxine Paul Pouravelis, Portland, Me., for Edward C. Noyes.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Chief Judge.

### INTRODUCTION

This bankruptcy case began on January 21, 1983 when the debtor, C.E.N., Inc. ("debtor") filed a voluntary Chapter 11 Case. The debtor was in the business of fabricating, selling and servicing wood stoves under the corporate names of Madawaska Energy Corporation ("M.E.C.") and Madawaska Energy of New England. The claimant involved in the instant case, Edward C. Noyes, was the President and sole shareholder of the company.

Shortly after the filing of debtor's petition, Noyes made several advances to debtor to meet certain expenses of the debtor. These advances included amounts for payroll expenses, telephone, accounting and storage charges and advances to pay insurance premiums, water and electricity bills.

This case was subsequently converted to Chapter 7 by Order dated July 12, 1985. Noyes subsequently filed a proof of claim for administrative expenses in the amount of $8,123.65.

The Chapter 7 Trustee objects to allowance of the Chapter 11 administrative claim of Noyes. In his objection, the Trustee alleges that: 1) there was no notice and a hearing on any motion or application of Edward Noyes during the course of the Chapter 11 proceeding which authorized the debtor to incur unsecured credit or debt; and 2) the advances made by Noyes to the debtor as an insider are not "in the ordinary course of business" such that they would qualify for administrative status without notice and a hearing under section 364(a).

A hearing was held on the Trustee's objection on July 21, 1987 and both parties subsequently filed briefs.

### DISCUSSION

This little controversy focuses on the definition of "ordinary course of business" as that phrase is used in section 364(a). 11 U.S.C. § 364(a). Section 364(a) states:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1304, 1203 or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

Thus, "section 364(a) gives the priority of an administrative expense to persons who extend credit to the trustee or debtor in possession [*See* § 1107] in the ordinary course of business." 2 *Collier on Bankruptcy* ¶ 364.02 at 364–6 (L. King 15th ed. 1986).

The Trustee argues that the advances by Noyes should be viewed as incurring debt *not* in the ordinary course of business. Thus, it would be up to the court, after notice and a hearing, to authorize the Trustee or debtor in possession to incur debt and allow it as an administrative expense under section 503(b)(1). *See* Section 364(b).

Alternatively, the Trustee argues that Noyes' administrative expense claim should not be allowed under section 503(b)(1)(A) because the debtor did not induce Noyes to make the advances and those advances did not benefit the estate.

Noyes argues that the debtor incurred debt (Noyes' advances) in the ordinary course of business and pursuant to section 364(a) those expenses are allowable as administrative expenses under section 503(b)(1).

Alternatively, and in response to the Trustee's section 364(b) argument, Noyes

urges that if the court does find that section 364(b) applies, then it should retroactively grant the advances administrative expense status.

The phrase "ordinary course of business" as it is used in section 364(a) is not defined in the bankruptcy code. The same phrase is used in sections 363 and 547(c)(2)(B) without definition. Nevertheless, the court in *In re Johns–Manville Corp.*, set forth a developing analysis as to whether an activity is within the debtor's ordinary course of business. 60 B.R. 612 (Bankr.S.D.N.Y.1986). The court needed to define the phrase in order to answer whether the debtor corporation's retention of certain lobbyists was in the ordinary course of business under section 363. As with section 364(a), section 363(c)(1) allows the trustee to use property of the estate in the *ordinary course of business without notice or a hearing.* (emphasis added). The court set forth an analysis using two dimensions: a "vertical" and "horizontal" dimension. The vertical dimension, or creditors' expectation test, focuses on a creditor's reasonable expectation of whether the debtor's transaction exposes him to an economic risk different from that he has accepted in the past. *Id.* at 616. Some courts have interpreted this to question whether "the transaction is within the day-to-day business of the debtor ..." *In re Waterfront Companies, Inc.*, 56 B.R. 31, 35 (Bankr.D.Minn.1985).

Still another court determined that:

The touchstone of "ordinariness" is ... the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and a hearing because their objections to such transactions are likely to relate to the bankrupt's Chapter 11 status, not the particular transactions themselves. Where the debtor in possession is merely exercising the privileges of its Chapter 11 status, which includes the right to operate the bankrupt business, there is no general right to notice and hearing concerning particular transactions.

*In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y.1983).

Thus, in applying the vertical dimension, courts have looked first at the debtor's prepetition business practices and conduct and compared it to the debtor's postpetition practices and conduct. *Johns–Manville*, 60 B.R. at 617 (*citing In re DeLuca Distributing Co.*, 38 B.R. 588 (Bankr.N.D.Ohio 1984)).

The horizontal dimension test, the *Johns–Manville* court concluded, involves "a comparison of *this* debtor's business to other like businesses" so that a court must then decide "whether a type of transaction is in the course of *that debtor's business* or in the course of some other business." *Id.* at 618 (*citing Waterfront*, 56 B.R. at 35) (emphasis in original). This part of the analysis has also been construed as a transaction that occurs in the day-to-day operations of a business. *Id.* (*citing In re Economy Milling Co.*, 37 B.R. 914, 922 (D.S.C. 1983); *In re Cascade Oil Co.*, 51 B.R. 877, 882 (Bankr.D.Kan.1985).

■ Noyes, in his supporting memorandum, admits that liquidation would be the eventual outcome of the debtor's Chapter 11 proceeding. The debtor was incurring these expenses not to continue the business as debtor in possession but to hold on to the asset until it could be liquidated. According to Noyes, the building had to be made available to prospective buyers to obtain the highest price. Noyes' interest in selling the principal asset of the debtor was certainly intensified because he was personally liable for the debtor's $99,000.00 tax liabilities. It is true that the type of expenses incurred in this case are common to virtually all businesses. If the debtor was incurring these expenses to further the business in pursuit of reorganization another conclusion might be warranted. But debtor's incurrence of these expenses was *not* in the ordinary course of business because the debtor was not continuing the business but preparing to sell its principal asset. The process of selling the principal asset of a business is not within the day-to-

day business of the debtor. Therefore, under the tests set out above, the expenses incurred in this case were *not* in the ordinary course of business.

Finally, Noyes argues that *In re Gloria Mfg. Corp.* bears a close resemblance to the case at bar. 47 B.R. 370 (E.D.Va.1984). Although that case did involve advances made by an insider to a debtor corporation, those advances were for payroll to keep the business going, not to liquidate the business. Further, the court allowed the advances as administrative expenses "provided ... such materials, supplies and services were ... necessary for the purpose of carrying on the business ..." *Id.* at 373. In the case at bar, debtor incurred expenses to expedite liquidation and not for the purpose of carrying on the business.

■ Noyes next argues that, independent of Section 364, his administrative claim is allowable under Section 503(b)(1) as "actual, necessary cost and expenses of preserving the estate." This argument might be worthy of some merit if Noyes was not an insider and not personally liable for some $99,000.00 in tax liabilities paid by the Trustee out of proceeds of the sale of the debtor's assets. It is obvious that Noyes' advances were made to protect his own interests and not the interests of general creditors. *See In re Mammoth Mart,* 536 F.2d 950, 954 (1st Cir.1976).

■ Noyes next argues that if this court holds that section 364(b) applies, as it does, then Noyes may be retroactively granted administrative expense status. Noyes cites *In re American Cooler Co., Inc.* as support. 125 F.2d 496 (2d Cir.1942).

In *American Cooler,* the Second Circuit stated "that an unauthorized loan may receive priority as an expense of administration in unusual circumstances." *Id.* at 497. The court went on to suggest guidelines as to when these 'unusual circumstances' might be present:

[T]he judge should not retroactively validate the loan unless he is confident that

he would have authorized it if a timely application had been made, and unless, in addition, he is reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction.

*Id.* The court did emphasize, however, that "this equitable power must be cautiously exercised, and that only a foolhardy lender will attempt to make it serve as a substitute for proper authorization." *Id. See Also Wolf v. Nazareth Fair Grounds & Farmers' Market, Inc.,* 280 F.2d 891, 892 (2d Cir.1960) (where the Second Circuit allowed retroactive approval of an unauthorized loan and found significant that the "use of the proceeds was instrumental in enabling [the debtor] to continue as a going concern."); *In re J.C. Groendyke Co.,* 131 F.2d 573 (2d Cir.1942); *In re London, Inc.,* 70 B.R. 63 (Bankr.E.D.Wisc.1987); *In re Gloria Mfg. Corp.,* 65 B.R. 341 (E.D.Va. 1985); *In re Cascade Oil Co., Inc.,* 51 B.R. 877 (Bankr.D.Kan.1985); *In re Alafia Land Development Corp.,* 40 B.R. 1 (Bankr.M.D.Fla.1984).

■ It seems apparent that the reasons this court elucidated in concluding that the advances were *not* in the ordinary course of business also apply with respect to the appropriateness of retroactive granting of an administrative expense claim under section 364(b). Further, "a preference gained by a high ranking insider of the debtor is a possibility which cannot be dismissed lightly." *In re Zerodec Mega Corp.,* 39 B.R. 932, 935 (Bankr.E.D.Pa.1984). Transactions between debtor and Noyes, clearly an insider under section 101(30)(B), are "subject to greater scrutiny than 'arms length' transactions ..." *Id.* (*citing Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939)). This court does not share Noyes' confidence that the advances would have been approved if the proper procedures were undertaken especially considering the insider status of Noyes.[1] Fur-

**1.** This court does not, however, subscribe to a *per se* rule disallowing administrative expense

status to an insider under all circumstances.

ther, it is not at all clear that the creditors were not harmed by the actions of debtor and Noyes in light of the Trustee's payment of $99,000.00 of tax liabilities for which Noyes would be personally liable. Finally, it is hard to explain why debtor and Noyes did not apply to this court initially for proper court authorization. Section 364(b) contains provisions which provide an express procedure for obtaining authorization for borrowing. For all of the above reasons, this court declines to exercise the equitable relief Noyes seeks. Accordingly, the Trustee's objection is sustained and Noyes' claim is disallowed as an administrative claim. An appropriate order will be entered.