**In re Leonard J. MASSETTI a/k/a Massetti, Leonard and Malamut, Steven, Co–Partners, also trading as Grandaddy's and Massetti and Malamut, a Partnership, Debtors.**

**Bankruptcy No. 82–02608F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 1, 1989.

See also, Bkrtcy., 60 B.R. 756.

Howard Gershman, Alan E. Boroff, Boroff, Harris & Heller, P.C., Plymouth Meeting, Pa., for applicants/debtors, Leonard J. Massetti and Steven Malamut.

Paul D. Keenan, Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Frank Tambone, objector.

Eric M. Hocky, Rubin Quinn Moss & Heaney, Philadelphia, Pa., for Trustee, Fred Zimmerman.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

Leonard J. Massetti and Steven Malamut have filed an application for "reimbursement of expenses" to which the chapter 7 trustee objects and also "counterclaims." This dispute is made triangular by the position of Frank A. Tambone, a judgment creditor of Messrs. Massetti and Malamut who has filed a writ of garnishment against the trustee. In essence, the respective positions are these: the applicants assert an administrative expense claim; the trustee challenges the existence of any claim; alternatively, the trustee maintains that he has a claim against the applicants pursuant to 11 U.S.C. § 723 which should be set-off against any claim possessed by the applicants; and the garnishor contends that the applicants have a valid claim to which the trustee is not entitled to set-off. This contention takes shape through the following factual scenario, to which all parties have stipulated.

## I.

On June 7, 1982, the debtors, two partnerships, filed a voluntary petition in bankruptcy under chapter 11. On February 28, 1984 the chapter 11 case was converted to chapter 7. The applicants, Massetti and Malamut, are the general partners of the partnership debtors. Among the assets of the partnerships' estate was real property located at 1715 Easton Road, Doylestown, Pennsylvania. In November, 1982, prior to conversion, various mortgage holders sought relief from the automatic stay to foreclose upon the property. A stipulation was then reached and approved by the court which allowed, *inter alia,* the partnership debtors' a finite time to sell the property. While seeking a buyer, the debtors were obligated to make payments to the mortgagees. If the property were not sold within the specified time, or if the requisite payments were not made, the mortgagees were granted relief from the stay to resume foreclosure.

In fact, the property was timely sold and, after payment of all liens, the estate received proceeds in the amount of $56,504.47. This dispute arises because the applicants, during the period of time covered by the stipulation, paid $8,000.00 to the mortgagees, $5,240.63 in property insurance, and $108.48 in utility charges connected with the property. No prior notice was given to any party in interest that the applicants were planning to make these payments, nor did the then chapter 11 debtors provide creditors with any notice or opportunity for a hearing regarding the payment of these sums by the applicants. In addition, there was no court approval given for these payments.

Shortly after the above-mentioned stipulation was approved, Tambone obtained a state court judgment against both Massetti and Malamut as individuals in the amount of $22,230.30. In August 1984, Tambone followed Pennsylvania procedure, Pa.R.Civ. P. 3101 *et seq.,* and began garnishment

proceedings against the chapter 7 trustee. These proceedings have not yet resulted in a judgment against the garnishee trustee. Pa.R.Civ.P. 3146.

The parties agree that total claims against the debtor-partnerships are $116,-335.24. Total assets, though, are only $65,-221.42, leaving a shortfall of $51,113.82. Moreover, counsel to the trustee expects to assert an administrative claim in excess of $5,000.00. Mr. Malamut filed his own chapter 7 bankruptcy petition in June 1986 and received his discharge in April 1987. Mr. Massetti, though, has not filed any bankruptcy petition. As a result, the trustee only asserts his counterclaim for the deficiency against Mr. Massetti. 11 U.S.C. § 723(b). The trustee has also agreed as follows:

> The sums expended by Applicants constituted actual, necessary costs and expenses of preserving the estate, which would, if authorized, be allowable under Sections 503(b)(1) and 507(a)(1).

[Stipulation of Facts ¶ 7].

## II.

## A.

The first issue which should be addressed is whether the general partners hold an allowable administrative expense claim[1] against the partnership estate for payments they made to the mortgagees, along with insurance and utility payments. If not, then Mr. Tambone has no garnishment claim against the trustee, and the question of set-off of the trustee's claim against the partners' claim does not arise.

Both the general partners (as well as the garnishor) contend that the approximately $13,000.00 in payments they made yielded a tangible benefit to the partnership estate: viz, $56,504.47 in proceeds from the sale of the partnership realty. Without such payments, they argue, the mortgagees would have foreclosed and the estate would never have received any proceeds from the sale

of this asset. As a result, they assert that the plain language of 11 U.S.C. § 503(b)(1), along with basic principles of equity and fairness, support their application for allowance of a priority claim.

The trustee acknowledges that the partners' payments represent "actual, necessary costs and expenses of preserving the estate." (Stipulation ¶ 7).[2] Accord, e.g., In re Gamma Fishing Co., 70 B.R. 949 (Bankr.S.D.Cal.1987) (insurance coverage categorized an administrative expense). Nonetheless, he argues that the partners' failure to comply with 11 U.S.C. § 364(b) deprives them of any administrative claim.

11 U.S.C. § 364(b) states:

> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

Thus, one who extends unsecured credit to a debtor, postpetition, may have a valid claim for recovery on a priority basis. See, e.g., In re Hartley, 39 B.R. 273 (Bankr.N. D.Ohio 1984).

This subsection, though, requires that a postpetition loan to the debtor be preceded by bankruptcy court approval, after notice, and an opportunity for a hearing, to parties in interest, when the extension of credit is not in the ordinary course of the debtor's business. See In re John Deskins Pic Pac, Inc., 59 B.R. 809 (Bankr. W.D.Va.1986). As no notice was given to creditors or bankruptcy court approval obtained in connection with the payments made by these general partners, the trustee contends that no priority under § 503(b)(1) may be allowed. Accord, e.g., Matter of London, Inc., 70 B.R. 63 (Bankr. E.D.Wisc.1987); In re Glover, Inc., 43 B.R. 322 (Bankr.D.N.M.1984); Matter of Alafia

---

1. Although not asserted by the general partners, the garnishor suggests in his posttrial memorandum that these partners hold a secured claim by virtue of the subrogation section, 11 U.S.C. § 509. This issue will be discussed below.

2. Because of this concession, I need not decide whether all three aspects of the payments (i.e. mortgage, insurance, and utilities) fall within the scope of § 503(b)(1).

*Land Dev. Corp.*, 40 B.R. 1 (Bankr.M.D. Fla.1984).

■ Although not clearly expressed, the partners here offer three alternative responses to the trustee's argument. First, they contend that the loan was made in the ordinary course of the debtor's business and so 11 U.S.C. § 364(a) rather than § 364(b) applies. Section 364(a) permits the extension of credit in the ordinary course of business to be undertaken without notice or court approval. *See generally In re John Deskins Pic Pac, Inc.*

■ The partners assert (although the record is silent on the issue) that the partnership was in the real estate business and therefore payments of mortgage, insurance, and utility expenses were in the ordinary course of the partnership's business. Assuming this to be true,[3] this response misconstrues the question. The issue is not whether the payment of expenses was in the ordinary course of business but whether the credit extension was. *See generally In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988); *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 986–87 (Bankr.E. D.Pa.1988); *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr.S.D.N.Y.1986). There is nothing in the record before me to demonstrate that real estate partnerships in general, or this one in particular, typically borrow funds from their general partners (or other lenders) to pay their operating expenses. As it is the partners who seek the allowance of priority status, it is they who have the burden of proof on this issue. *See Matter of Patch Graphics*, 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). Thus, I cannot conclude that § 364(a) is applicable.

### B.

The partners also suggest that section 364 should be ignored and only the language of 11 U.S.C. § 503(b)(1) be considered. To do so would overlook the clear language of a specific code provision as well as the purpose behind § 503(b)(1).

■ Section 503(b)(1) represents congressional recognition that, in chapter 11, the best opportunity for a business to reorganize occurs when postpetition suppliers of goods and services do not demand immediate payment. Such suppliers are highly unlikely to extend credit to an entity in bankruptcy unless they are granted priority of payment over prepetition unsecured creditors. *See Matter of Jartran*, 732 F.2d 584, 586 (7th Cir.1984); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976). Generally speaking, then, an administrative claim arises from a transaction with the debtor-in-possession which is beneficial to the continued operation of the debtor's business. *In re Mammoth Mart, Inc. Accord, e.g., In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987). Since the allowance of priority claims reduces the amount of the estate available to prepetition creditors, what constitutes an administrative expense is narrowly construed. *See, e.g., Matter of Jartran; In re Great Northeastern Lumber & Milwork Corp.*, 64 B.R. 426, 427 (Bankr.E.D.Pa.1986). Courts have allowed administrative claims only to those suppliers who were "induced" by the debtor-in-possession to provide goods and services. *See In re White Motor Corp.; In re Jartran; In re SMB Holdings, Inc.*, 77 B.R. 29, 32 (Bankr.W.D. Pa.1987); *In re Glover, Inc.*, 43 B.R. at 325.

■ The dispute *sub judice* involves a loan of funds from the general partners to their partnership rather than the provision of goods and services. Thus, I cannot conclude that § 503(b)(1) rather than § 364(b) is the applicable statutory provision. *See, e.g., In re Gloria Mfg. Corp.*, 47 B.R. 370 (E.D.Va.1984); *Matter of London, Inc.*, 70 B.R. at 66; *Matter of Alafia Land Development Corp.* Moreover, it is difficult to envision that one who guarantees a loan made to the debtor[4] is later induced by the

---

**3.** The trustee challenges the assumption by arguing that the partnership conducted no business after the chapter 11 was filed. *See In re Hartley,* 39 B.R. at 278. The stipulated record is also silent as to this factual assertion.

**4.** As will be discussed below, the partners concede that they were personally liable to the mortgagees.

debtor-in-possession, as opposed to acting voluntarily in his own self-interest, to provide postpetition funds to repay that loan when the debtor-in-possession fails to do so. *Matter of London, Inc.*, 70 B.R. at 66. Therefore, I reject the partners' assertion that § 503(b)(1) as opposed to § 364(b) applies to their postpetition loan.

### III.

■ It is the partners last contention that reaches the crux of the dispute. They argue that it would be inequitable to disallow their request for administrative claim status given the undisputed benefit which the partnership estate derived from their postpetition payments. Insofar as the partners implicitly suggest that courts have the discretion to allow, under certain circumstances, priority status to those who have extended postpetition credit to the debtor-in-possession without complying with the notice and approval requirements of § 364(b), I acknowledge decisions so holding. *See, e.g., In re Gloria Mfg. Corp.*, 65 B.R. 341 (E.D.Va.1985); *In re Gloria Mfg. Corp.*, 47 B.R. 370.

Approval of priority status after credit has been extended is tantamount to retroactive notice and approval. In order to receive such retroactive approval the equities must be "compelling." *In re Allen Carpet Shops, Inc.*, 27 B.R. 354, 358 (Bankr.E.D.N.Y.1983). *See, e.g., In re Gloria Mfg. Corp.; In re SMB Holdings, Inc.* The authority most often cited in support of court power to exercise such discretion is *In re American Cooler Co.*, 125 F.2d 496, 497 (2d Cir.1942):

> We think that the judge should not retroactively validate the loan unless he is confident that he would have authorized it if a timely application had been made, and unless, in addition, he is reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lend-

er, whether or not they honestly believed that they had authority to enter into the transaction. Of necessity, each case must stand on its own facts and these criteria cannot be mechanically applied; they should, however, materially facilitate the preparation of an intelligent record. We should emphasize that this equitable power must be cautiously exercised, and that only a foolhardy lender will attempt to make it serve as a substitute for proper authorization.

*Accord, Matter of Alafia Land Dev. Corp.*

Whether the relatively broad approach enunciated by *American Cooler* is applicable in this circuit, in light of recent instructions given by the Third Circuit Court of Appeals that *nunc pro tunc* relief may only be granted in "exceptional circumstances," *see In re F/S Airlease II, Inc.*, 844 F.2d 99 (3d Cir.1988) *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Arkansas Co.*, 798 F.2d 645 (3d Cir.1986), I need not decide. Assuming that I have the broad discretion [5] to grant retroactive relief to unsecured lenders,[6] I decline to exercise such power in the instant matter. In fact, I conclude that it would be inequitable to grant the partners the relief they seek.

### A.

■ General partners are not viewed as creditors of the debtor partnership. *In re Riverside–Linden Inv. Co.*, 85 B.R. 107 (Bankr.S.D.Cal.1988). In fact, it has long been held that any payments received by the general partners from the partnership's estate should only come after all partnership creditors have been paid in full. *See In re Rice*, 164 F. 509 (E.D.Pa.1908); *In re N.S. Garrott & Sons*, 48 B.R. 13 (Bankr.E.D.Ark.1984); *In re Bell & Beckwith*, 44 B.R. 664 (Bankr.N.D.Ohio 1984). Therefore, unless the partnership debtor is solvent, the general partner receives no distribution.

---

**5.** The bankruptcy court in *In re Glover,* 43 B.R. at 324, interprets decisions such as *American Cooler* somewhat narrowly.

**6.** The exercise of any such discretion must also take into account the policy of construing priorities narrowly so as to protect the estate.

■ 11 U.S.C. § 723 takes this principle one step further. As the trustee asserts, and as the partners ruefully acknowledge, § 723(a) holds the general partners responsible for all unpaid debtor partnership claims for which they were personally liable prepetition.[7] In other words, to the extent that partnership claims exceed partnership assets, "each general partner ... is liable to the partnership's trustee for any deficiency...." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 381 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6337. *See, e.g., In re Riverside–Linden Inv. Co.; In re Comark,* 53 B.R. 945, 947 (Bankr.C.D. Cal.1985); *In re I–37 Gulf Ltd. Partnership,* 48 B.R. 647 (Bankr.S.D.Tex.1985); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bankr.S.D.N.Y.1982).

Here, it is conceded that the partnership was insolvent. Debts exceed assets by a considerable margin. *See* 11 U.S.C. § 101(31). This should result in the liability of the general partners to the estate, rather than an allowance of a priority claim against the estate. Nonetheless, the partners argue that to disallow their application for an administrative claim would "inequitab[ly] deprive them of the benefit that they bestowed upon their creditors and would essentially be compelling them to pay twice for the same obligations to the other creditors." (Applicants' Memorandum, at 3.) Actually, the reverse is true: to allow this application would doubly compensate these partners. This can be easily illustrated by a simple example.

Assume that a debtor partnership estate consists only of one asset: real estate with a fair market value of $100,000.00. There also is only one secured creditor holding a $100,000.00 secured claim, and unsecured claims total $25,000.00. In a chapter 7 proceeding, the trustee would liquidate the sole asset, pay the secured creditors, *see* 11 U.S.C. §§ 725, 726 and assert a $25,000.00 deficiency claim against the general partner, pursuant to § 723(a). Assume, though, that the general partner, during the course of the chapter 7 case, paid $10,-000.00 to the secured creditor, thereby reducing the secured claim to $90,000.00. Again, if the property were then sold and its full value achieved, the allowed secured claim would be paid in full, $10,000.00 would remain estate property after sale, and the deficiency would be only $15,-000.00. Thus, without allowance of any general partner claim, that partner has received full credit for his payment to the mortgagee. To also allow him a priority of $10,000.00 which would either be paid directly to him or which would be set-off against his § 723(a) liability would reduce the partner's liability to $5,000.00. If one accepts the partners' position, a general partner could easily reduce a $25,000.00 obligation to $5,000.00 simply by paying $10,000.00.

In essence, then, the partners here seek double recovery for their payments made on behalf of the partnership on debts for which they were personally liable. Such attempts at double recovery have been denied by other courts, which have disallowed claims by individuals for payments made to reduce debts on which they were jointly liable or guarantors. *See Matter of London, Inc.* (payments made by debtor shareholders on mortgages which they had guaranteed disallowed as priority claim); *Matter of Unclaimed Freight, Inc.,* 64 B.R. 435 (Bankr.M.D.Fla.1986) (payments made by debtor's shareholder on lease for which he was guarantor was not entitled to priority status). *See also In re Keegan Utility Contractors, Inc.,* 70 B.R. 87 (Bankr.W.D. N.Y.1987) (officer of debtor corporation who was sued on theory of joint liability for the debtor's unpaid pension contribu-

---

**7.** Section 476 of the 1984 Bankruptcy Amendments and Federal Judgeship Act, Pub.L. 98–353, added the requirement that the general partner is responsible for a deficiency only of those unpaid claims for which he was personally liable. As general partners are usually liable, under state law, for partnership debts, *see, e.g., In re Malone,* 74 B.R. 315, 319 (Bankr.E.D.Pa. 1987), this amendment simply made clear that subsection 723(a) did not create obligations of a general partner not otherwise found in nonbankruptcy law. *Cf. Matter of Barton & Ludwig,* 37 B.R. 377 (Bankr.N.D.Ga.1984) (a general partner has no liability under § 723(a) to the extent that a creditor has released the general partner prepetition). There is no dispute that the general partners here were personally liable on the mortgage agreements.

tions may not assert priority claim for the expenses incurred in defending against the lawsuit).

By preserving the partnership asset for sale, the general partners acted in their own self-interest, reduced debts for which they were jointly liable along with the partnership, and greatly reduced the amount of any deficiency claim which could be asserted by the trustee. They have already been compensated.[8] Thus, their application for reimbursement of expenses must be denied.[9]

### IV.

In sum, the application of Messrs. Massetti and Malamut for allowance of an administrative expense claim will be denied. The trustee, though, has asserted, and Mr. Massetti does not contest, a "counterclaim"[10] for $56,113.92 representing the deficiency, inclusive of administrative expenses incurred by the trustee, between assets and liabilities. As the deficiency has been clearly established, this counterclaim will be granted. *See In re Black & White*

*Cattle Co.,* 30 B.R. 508 (9th Cir.B.A.P. 1983); *In re I–37 Gulf Ltd. Partnership.*

An appropriate order shall be entered.

---

**8.** Similarly, the garnishor's assertion that the partners are entitled to be subrogated to the secured status of the mortgagees, to the extent the claim of the mortgagees were reduced by postpetition payments, 11 U.S.C. § 509, must be rejected. Assuming the § 509 argument was appropriately raised, it has been recently noted that:

> Subrogation is an equitable remedy. It is not an absolute right but one which depends on the equities and attending facts and circumstances of each case.
> . . . .
> The prerequisites of equitable subrogation. . . . are:
> (1) Payment must have been made by the subrogee to protect his own interest.
> (2) The subrogee must not have acted as a volunteer.
> (3) The debt paid must be one for which the subrogee was not primarily liable.
> (4) The entire debt must have been paid.
> (5) Subrogation must not work any injustice to the rights of others.

*In re Flick,* 75 B.R. 204, 206 (Bankr.S.D.Cal. 1987).

The *Flick* court recognized that general partners normally will not be subrogated when paying partnership debts since, in essence, they are repaying their own debts. *Id.* Moreover, for the reasons stated above, it would be inequitable to allow subrogation here as that would coun-

tenance double compensation to these general partners.

**9.** In their posttrial memorandum, the partners acknowledge that any claim which they possess against the estate due to their postpetition payments may be offset against their liability under § 723(a). Despite that position, the only basis they cite for the allowance of a claim is § 503(b)(1). Of course, once they concede the trustee's right to set-off, an administrative claim is no more valuable to them than a general unsecured claim.

The initial application filed is unclear and the memorandum of law offers no hint that the partners assert a general unsecured claim. Assuming that issue has not been waived, I note at least one decision which concludes, in essence, that court discretion to retroactively approve postpetition credit pursuant to 11 U.S.C. § 364(b) includes the power to grant that lender a general unsecured claim, even if the equities do not allow the grant of a first priority claim. *Matter of Alafia Land Dev. Corp.,* 40 B.R. at 5–6. Here, though, I would decline to exercise such discretion because of the resulting double recovery for these partners.

**10.** As no objection has been raised, I do not pass upon the procedural validity of asserting a claim under § 723(a) by way of a response to an application by a general partner for payment of an administrative claim.