**In the Matter of LINDO'S TOURS, USA, INC., Debtor(s).**

**Bankruptcy No. 82–2237.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 6, 1985.

Harley E. Riedel, Tampa, Fla., for debtor.

Shirley Arcuri, Tampa, Fla., for movant.

Jeffrey Warren, Tampa, Fla., for creditors committee.

Robert B. Glenn, Jr., Tampa, Fla., for Ford Motor Credit Co.

## ORDER ON APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Application for Allowance of Administrative Expense to be accorded a first priority status pursuant to § 507(a)(1) of the Bankruptcy Code. The Application is filed by Alpha Business Consultants, Inc. (Alpha) who claims to be entitled to a sales commission in the amount of $37,500.00, allegedly earned in conjunction with the sale of certain assets of Lindo's Tours, USA, Inc. (Lindo), the Debtor involved in the above-captioned Chapter 11 case.

The Application is opposed not only by Lindo but also by the Official Creditor's Committee and also by Ford Motor Credit Company, a secured creditor of the Debtor. The challenge of the right of Alpha to receive any allowance is based on the following contentions:

First, it is contended that Alpha has no standing to seek an allowance because only the Debtor has standing to seek authority to employ professionals and to pay commission to a business broker such as Alpha. Secondly, no allowance can be made to a professional employed by a debtor-in-possession unless the employment was authorized by the Court and since the employment of Alpha was never authorized by this Court, none can be paid. In addition, it is the contention of the parties opposing the Application that Alpha was not the procuring agent of the sale of the properties of Lindo and even if it was, the commission sought is grossly excessive.

The evidence presented at the final evidentiary hearing reveals the following:

At the time relevant to the matter under consideration, Lindo was already involved as a debtor-in-possession in a Chapter 11 case. As a debtor-in-possession, Lindo was authorized to continue to operate its business, one facet of which was the operation of chartered bus tours in the State of Florida. Although the Chapter 11 case had been pending since October 25, 1982 and the Plan of Reorganization filed by Lindo had been scheduled for confirmation several times, Lindo had not been able to proceed to confirmation simply because it did not have the funds needed for confirma-

tion. By the summer of 1984, it became evident that unless Lindo was able to achieve confirmation in the near future, it would face either a dismissal or conversion of the case to a Chapter 7 and would be liquidated.

At this point, the president of Lindo commenced to explore the possibility of selling the bus division of Lindo. Although there is evidence in this record that Lindo contacted one Mr. Slaughter who, at that time was an officer of Gulf Coast Gray Lines, a corporation also engaged in the bus tour business, a business owned or at least controlled by Mr. Henry; nothing really developed from this contact. As a result, Mr. Lindo contacted Alpha and ultimately entered into an agreement with Alpha entitled "Client Agreement" (Exhibit # 1). The Agreement, executed by Mr. Lindo on behalf of the Debtor, granted Alpha the exclusive right to sell the bus division of the Debtor, including all buses, equipment, and goodwill for $100,000 cash plus an assumption of all liabilities of Lindo. The Agreement provided for a sales commission to be paid to Alpha of 25% of the cash proceeds of the sale upon closing. The Agreement also provided that any sale was contingent upon approval by the bankruptcy court (Exhibit 1, paragraph 14).

There is no dispute that the Debtor never applied for authority to engage the services of Alpha. It is without doubt that Alpha did immediately undertake an aggressive campaign in order to obtain a purchaser for the assets to be sold by the Debtor, albeit without success. Alpha contacted through the mail and also telephonically all major corporations engaged in the bus tour business—particularly those who appeared to be likely prospects. It is without dispute, however, that Mr. Lindo expressly instructed Cletis Belsom, the representative of Alpha, not to contact Mr. Henry, the principal of Gulf Coast Gray Lines, because his corporation was the major competitor of Lindo in the State of Florida and Mr. Lindo did not want it to be known to the competition that its major asset was for sale.

Be that as it may, it appeared at one point in time that Mr. Henry appeared on the horizon as the only lively prospect for the purchase. Whether this came about as a result of the efforts of Alpha or independent of any involvement of Alpha is really without any significance in light of the undisputed fact that from that point on the representative of Alpha was intimately involved in the negotiation with Mr. Henry, the negotiations which ultimately culminated in the sale on which Alpha claims to have earned the $37,500.00 commission it seeks by its Application under consideration.

It is clear and it is conceded by Alpha that the sale which was ultimately concluded and approved by this Court is a sale on terms totally different than the terms originally outlined in the Agreement entered into between Alpha and the Debtor. The sale, as originally contemplated, called for the sale of buses, equipment, and assumption of all liabilities of the Debtor for a purchase price of $1,000,000 plus. It called for only a $100,000 down payment and a commission of 25% which would have consumed all the cash proceeds of the sale. The sale, as ultimately consummated, does not include buses or equipment nor an assumption of liabilities. It calls for $150,000 cash on closing and a possible additional $100,000 more, dependent on the purchaser's ability to increase its business in the next year by 2½% over and above the present year's growth which is very unlikely to occur at this time.

This is the basic factual background to which one must apply the legal principles in order to resolve the matter under consideration which is Alpha's entitlement to the sales commission to be charged as an administrative claim accorded first priority pursuant to § 507(c) of the Bankruptcy Code.

It should be noted at the outset that it is basic to administration of estates under the Bankruptcy Code that trustees or Debtors-in-Possession do not have the authority to employ professionals pursuant to § 327 of the Bankruptcy Code without pri-

or court approval. The corollary to this is equally evident, which is, that as a general proposition no one can be awarded compensation for services rendered to the estate if the employment was not authorized. Of course, these general principles, just like others, are not without exception. Thus, there is respectable authority to support the proposition that the bankruptcy court may, in its discretion, award compensation to an attorney even though the Debtor never applied for authority to employ counsel. *In the Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983). *See also Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973). These cases permitted consideration of applications for allowance by professionals who were not authorized ·to be retained in spite of the clear language of Bankruptcy Rule 2016 which provides that allowance for professionals can only be approved on application of the trustee.

■ Thus, it is clear that the bankruptcy court has power to consider an application for allowance for services even though it was not filed by the trustee or by the Debtor, but by the professional himself or herself. This conclusion, however, is not the end but only the beginning of the inquiry and only leads to the really relevant point which must be considered in order to answer the ultimate question which is Alpha's entitlement to the commission it seeks.

■ It is well established and it is without serious dispute that before a professional can be awarded an allowance out of the funds of the estate, the employment must be authorized as a general rule prior to the commencement of the performance of the services. While nunc pro tunc approvals should be the exception, it may be proper upon a showing, first, that the application would have been approved had the same been presented prior to the employment of the professional and, second, the failure to file a timely application was due to excusable neglect and the fault of the trustee or the debtor-in-possession and not the professional. *In re American Cooler Co., Inc.*, 125 F.2d 496 (2d Cir.1942); *In re*

*Avorn Dress Co., Inc.*, 79 F.2d 337 (2d Cir.1935); *In the Matter of Alafia Land Dev. Corp.*, 40 B.R. 1 (Bankr.M.D.Fla.1984) (unauthorized borrowing by a debtor-in-possession).

Considering these requirements in reverse, this Court is satisfied, based on this record, that the services rendered by Alpha were beneficial; that they were performed and, contrary to the contention of the objecting parties, these services were instrumental in the ultimate consummation of the sale. This is so even though the terms of the sale were substantially different from the terms of the sale originally contemplated and which was the basis of the Agreement. There is nothing unusual that the terms of the ultimate sale change during the negotiation and the terms of the ultimate sale are radically different from the terms of the initial offer submitted to the selling agent by the seller of the property.

This leaves for consideration the first item, that is, the authorization of employment nunc pro tunc of Alpha which is, of course, an indispensable condition for allowance. This brings into consideration the question of whether the application to employ Alpha would have been approved had the Debtor filed the application prior to Alpha performing the services for which it seeks an allowance.

■ Considering the entire background of this Chapter 11 case, this Court is satisfied that this should be answered in the affirmative but not on the terms outlined in the Agreement. At the time the Debtor enjoyed the services of Alpha, Lindo was at the end of its quest to obtain confirmation of its Plan of Reorganization. It had no funds to meet its confirmation needs and had no other prospects to obtain the funds needed except through the sale of its business. This conclusion does not mean, however, that this Court would have approved a 25% commission. On the contrary, it is clear that under no circumstances would this Court have approved anything higher than a 10% commission based on the cash price, in light of the provisions of the Plan

of Reorganization. Alpha, in order to justify a 25% commission, put into evidence documents showing the time spent by Alpha while attempting to effectuate a sale. First, the legal competency of this documentation is questionable since it was prepared for this litigation and the documents do not represent contemporaneous recordation of time when the service in question was actually performed. Secondly, in determining the reasonable sales commission, the time spent is not of any significance and the reasonableness of the commission is generally measured by the usual rate charged in the industry in transactions similar to the transaction involved in the present instance.

Unfortunately, no such evidence has been presented in the present instance. Be that as it may, this Court would not have authorized a 25% commission, let alone 25% based not only on the actual cash payment but also on the potential additional consideration which is a deferred payment based on the performance of the bus division, a payment highly problematical, as noted earlier.

Based on the foregoing, this Court is satisfied that the objections to the allowance sought by Alpha should be overruled and its Application for Allowance should be granted but only in a reduced amount. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the objections to the allowance sought by Alpha be, and the same hereby are, overruled. It is further

ORDERED, ADJUDGED AND DECREED that the Application for Allowance be, and the same hereby is, granted in the amount of $15,000 and the Debtor shall pay the same within 10 days from the date of the entry of this order.