In the Matter of LONDON, INC., Debtor.

Howard and Emily BRADSHAW, Plaintiffs,

v.

John WALDSCHMIDT, Trustee of London, Inc., Defendant.

Bankruptcy No. 83–00080.
Adv. No. 84–0467.

United States Bankruptcy Court, E.D. Wisconsin.

Feb. 9, 1987.

Jack U. Shlimovitz, Ludwig & Shlimovitz, S.C., Milwaukee, Wis., for plaintiffs.

John F. Waldschmidt, trustee, Milwaukee, Wis., for defendant.

## MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

C.N. CLEVERT, Chief Judge.

Howard and Emily Bradshaw brought this adversary proceeding against London, Inc. ("London" or "debtor") to have the court invoke its equitable powers and impose a superpriority lien against London's assets, pursuant to 11 U.S.C. § 364(c). When the complaint was filed, London was a debtor in possession under Chapter 11 of the Bankruptcy Code. However, before the issues were joined, London converted its case to a liquidation bankruptcy under Chapter 7 of the Code. Thereafter, London's Chapter 7 trustee, John Waldschmidt, appeared in this proceeding and filed a general denial. Waldschmidt has now asked the court to grant his motion for summary judgment and to dismiss the complaint.

## FACTS

Since London's inception, Howard and Emily Bradshaw have been among its major stockholders and directors. At various times they have assisted the corporation in obtaining loans from the Northridge Bank by giving the bank their personal guarantees and collateralized pledges.

When London defaulted on its bank loan in 1982 and failed to pay the accelerated loan balance, the bank asked the Bradshaws to honor their guarantees. After London filed its voluntary Chapter 11 petition on January 12, 1983, the Bradshaws made three payments to the bank totalling $167,340.81. However, the Bradshaws never sought the court's or London's approval of these payments, nor did the payments result in the bank extending any additional credit to London.

During the course of the Chapter 11, London's assets were substantially liquidated and when the case was converted to Chapter 7, Waldschmidt was transferred liquidation sale proceeds of $28,792.09 plus bank account balances of $6,203.55.

## DISCUSSION

Waldschmidt's argument in support of his motion for summary judgment is that the Bradshaws' claim for a superpriority lien is not supported by statutory or case authority. The Bradshaws, on the other hand, assert that their payments benefitted London by enabling it to continue its attempts to effectuate a Chapter 11 plan and by reducing the possibility that the bank would seek conversion of its case to a Chapter 7. Thus, they contend that their claim satisfies the administrative priority test set forth in *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984) and *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976) which allows certain claims to be advanced for payment when they arise from transactions with a debtor in possession and are beneficial to the operation of the debtor's business.

### 1. Unavailability of Credit and Notice Requirement of 11 U.S.C. § 364(c)

Consideration of the issues presented begins by reviewing 11 U.S.C. § 364(c), which reads in pertinent part as follows:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

The first requirement for obtaining a superpriority lien under § 364(c) is a showing that the debtor is unable to obtain unsecured credit. Here the Bradshaws have not shown either by reference to stipulated facts or documents on file that unsecured credit was not available to London.

The Bradshaws have also failed to meet the notice and hearing requirements under 11 U.S.C. § 364(c). The meaning of the phrase "after notice and a hearing," is stated in 11 U.S.C. § 102(1), as

(A) ... after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

Although this section of the Bankruptcy Code recognizes that there are some instances when it may be necessary to dispense with an evidentiary hearing, the necessity of doing so is dependent upon the facts and circumstances in a particular case. *In re Monach Circuit Industries, Inc.*, 41 B.R. 859, 861 (Bkrtcy.E.D.Pa.1984); *In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bkrtcy.D.Maine 1980).

The Bradshaws' request for a retroactive lien in this case ignores the notice requirement of § 364(c)(1). Nearly six months elapsed between the filing of London's petition and the Bradshaw's first payment to the bank, and another six months passed between the first payment and the last. Yet, the facts fail to allege any exigent circumstances that would justify dispensing with the § 364(c) notice requirements during this approximately twelve month period.

### 2. Retroactive Grant of Priority Status

In general, courts have expressed reluctance to grant priority status to claims. They are even more reluctant to do so retroactively. *See, e.g., In re Cascade Oil Co., Inc.*, 51 B.R. 877, 883 (Bkrtcy.D.Kan. 1985); *In re Alafia Land Development Corp.*, 40 B.R. 1, 5 (Bkrtcy.M.D.Fla.1984). In *In re Alafia Land Development Corp.* the court stated:

It is the opinion of this Court ... that one who lends money to a debtor in possession without prior approval of the Court is not even entitled to the status of a general unsecured claim. ... To hold otherwise is to jeopardize the integrity of administration of estates by debtors which is of paramount importance. To ratify unauthorized borrowings or out of the ordinary course of business transactions, except under ... exceptional circumstances ... would create a dangerous precedent which may likely produce pernicious results, hostile and inimical to any legitimate and recognized goals and rehabilitative aims of the Bankruptcy Code. (citations omitted). *Id.* at 5.

A nunc pro tunc order validating post-petition borrowing should not be entered unless the judge

is confident that he would have authorized [the borrowing] if timely application had been made, and unless, in addition, he is reasonably persuaded that the creditors have not been harmed by continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lender, whether or not

they honestly believed that they had authority to enter into the transaction. *In re American Cooler Co., Inc.*, 125 F.2d 496, 497 (2nd Cir.1942).

Assuming for the moment that the Bradshaws' payments to the bank constituted loans to London, there is nothing in the record to suggest that the court would have granted the Bradshaws a superpriority lien if they had made a timely application; there is nothing in the record to show how creditors were effected by the continuation of London's business after the Bradshaws made payments to the bank, and there is nothing to show whether the Bradshaws acted in good faith and with the intention of benefitting London rather than themselves. Hence, the Bradshaws have not met the *American Cooler* standard for granting a nunc pro tunc priority lien.

### 3. Basis for Granting Administrative Priority to Post-Petition Advances

The statutory purpose for allowing administrative priorities in bankruptcy cases has been misconstrued by the Bradshaws. The Seventh Circuit Court of Appeals has stated that "administrative priority is granted to post-petition expenses so that third parties will be moved to provide the goods and services necessary for a successful reorganization." (Citations omitted.) *In re Jartran, Inc.*, 732 F.2d 584, 588 (7th Cir.1984). *In Jartran*, the Seventh Circuit found no inducement by the debtor in possession that would warrant granting an administrative expense priority under § 503 of the Code for costs of Yellow Pages advertising. While the court noted that the ads appeared in the Yellow Pages post-petition and were consequently a benefit to the estate, it found that the ads were irrevocably placed pre-petition and, therefore, were not the result of the debtor's post-petition inducement.

The facts presented in the case at bar require a similar finding. The Bradshaws admit that they were liable to the bank on guarantees, mortgages and collateral pledges granted prior to the filing of the debtor's bankruptcy petition. Further, London, as debtor in possession, never approved, disapproved or even acknowledged the Bradshaws' post-petition payments to the bank. These facts preclude a finding of post-petition "inducement of the creditor's performance *by the debtor-in-possession* [which] is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor." *Jartran*, 732 F.2d at 587 (emphasis in original).

### CONCLUSION

On the basis of the foregoing analysis, the court must find that the trustee has sustained his burden of showing that there is no genuine issue of material fact in this case and that he is entitled to judgment as a matter of law. The court cannot authorize a superpriority lien as requested by the Bradshaws, since doing so here would "not comport with the language and underlying purposes of § 503", *Jartran*, 732 F.2d at 586.