In re Edmund L. SMITH, Judith B. Smith, Debtor.

No. C–3–87–351.

United States District Court, S.D. Ohio, W.D.

June 7, 1989.

Reginald Jackson, Columbus, Ohio, for debtors and debtors in possession.

Barry P. Reich, Springfield, Ohio, for Prudential Life Ins. Co. of America.

David F. Allen, Marysville, Ohio, for Ohio Grain Co.

Ray A. Cox, Dayton, Ohio, for Farm Credit Services of the Fourth District.

David F. Allen, Marysville, Ohio, for Ohio Grain Co.

DECISION AND ENTRY OVERRULING THE MOTION OF APPELLEE, THE OHIO GRAIN COMPANY, TO DISMISS APPEAL (DOC. # 4); DECISION AND ENTRY AFFIRMING DECISION AND ORDER OF BANKRUPTCY COURT; TERMINATION ENTRY

RICE, District Judge.

This matter is before the Court on an appeal from a decision of the Bankruptcy Court, declaring (and so ordering) that Appellant, Miami Valley Production Credit Association (PCA) and Prudential Insurance

Company of America (Prudential) have no rights in the Debtors' 1986 crops and that Appellee, Ohio Grain Company has an equitable lien in the "net proceeds" of the Debtors' 1986 crops. 72 B.R. 344. Ohio Grain Company has moved this Court for an Order dismissing this appeal on the grounds that PCA has failed to comply with the provisions of Bankruptcy Rule 8006 (Doc. # 4).

Before reaching the merits of PCA's appeal, the Court will consider the Motion to Dismiss of Ohio Grain Company. In said motion, Ohio Grain Company asserts that PCA has failed to comply with the provisions of Bankruptcy Rule 8006 in that PCA failed to file a statement of the Designation of Record and a Statement of the Issues presented in the case within ten (10) days of the notice of the appeal. (Doc. # 4). PCA does not dispute the fact that the Notice of Appeal to the District Court was filed of record on May 19, 1987, while the Designation of Record and Statement of Issues was not filed of record until June 4, 1987 (Doc. # 5). However, PCA asserts that the "designation was properly prepared and sent to the court for filing in time." (Doc. # 5). PCA is unaware of the reason for the delay.

The Sixth Circuit has provided a standard for dismissal in situations in which dismissal is sought on the grounds that a Designation of Record was untimely filed. *In re Winner Corp.,* 632 F.2d 658, 661 (6th Cir.1980).

> This power [to dismiss], however, should not be exercised generally unless the omission arose from negligence or indifference of appellant and, where good faith is shown, ... the court, in order to avoid injustice, may, on a proper suggestion or on its motion, direct that the omission be corrected by a supplemental transcript or remand the cause for a finding on controverted fact questions.

*Id.* (quoting *Drybrough v. Ware,* 111 F.2d 548, 550 (6th Cir.1940)). The existence of bad faith on the part of an appellant is a key consideration. *Id.* In the case at bar, there is absolutely no evidence that PCA was acting in bad faith. Further, there is absolutely no evidence that the short delay in filing caused Ohio Grain Company any prejudice whatsoever. Based upon the foregoing, the Court concludes that Ohio Grain Company's Motion to Dismiss Appeal must be and hereby is overruled in its entirety.

The merits of the controversy currently before this Court arose when the Debtors, Edmund L. Smith and Judith B. Smith, moved the Bankruptcy Court for a determination that Debtors' 1986 crop remains the property of the bankruptcy estate, that such crop is not subject to the lien interests of PCA and/or Prudential and that the Debtors are entitled to sell the crop and use the proceeds of the sale to pay administrative expenses and to fund Debtors' plan of reorganization and/or business operations. Subsequently, Ohio Grain Company, a creditor of the Debtors, filed an application for a *nunc pro tunc* order authorizing the Debtors to obtain secured credit and granting Ohio Grain Company a security interest in Debtors' 1986 crops or, in the alternative, allowing the Ohio Grain Company an administrative expense priority claim.

The Bankruptcy Court below found that, despite the existence of certain security agreements and mortgages, PCA and Prudential do not have any rights in the Debtors' 1986 crops. The Bankruptcy Court below further concluded that although Ohio Grain Company failed to seek prior court approval of their loan to Debtors, Ohio Grain has an equitable lien in the "net proceeds" of the Debtors' 1986 crops. In its appeal, Appellant PCA makes three assignments of error.[1] *First,* PCA asserts that the court below erred in holding that PCA had no interest in Debtors' 1986 crop. *Second,* PCA asserts that the court below erred in failing to consider the mortgage of PCA as granting it security. *Third,* PCA asserts that the court below erred in holding that creditor Ohio Grain had an "equitable lien" on "net proceeds" of the 1986 crops. For the reasons set forth below, the

---

1. Prudential is *not* a party to this appeal.

Court concludes that PCA's assignments of error are without merit and, thus, that the decision of the Bankruptcy Court must be affirmed.

## I. THE FACTUAL BACKGROUND

█ The Court notes that in considering an appeal from a Bankruptcy Court, the Court shall not set aside findings of fact unless clearly erroneous. *See* Bankr.R. 8013. Having reviewed the Findings of Fact set forth in the Decision and Order of the Bankruptcy Court, this Court finds them to be an accurate summation of the sequence of events leading up to the filing of the Adversary Proceeding below. The Court, therefore, adopts these factual findings and incorporates them into this Decision and Entry to serve as a foundation for the ensuing discussion:

Prior to the hearing, the following agreed stipulations were entered into by the debtors, Miami Valley Production Credit Association ("PCA"), and the Prudential Insurance Company of America ("Prudential"):

1. That by Mortgage Deed dated June 30, 1978, Debtors conveyed to the Prudential Insurance Company of America ("Prudential") a valid lien upon all of Debtor's right, title and interest on and to the real property described therein.

2. The Prudential Mortgage was given to secure a certain Promissory Note of even date therewith, in the original amount of $650,000.00.

3. That the real property which is subject to the mortgage lien of Prudential was sold by the Sheriff of Champaign County, Ohio, at Sheriff's Sale conducted on January 16, 1987, in Case No. 86–CIV–56. The confirmation of said sale is still pending.

4. The net proceeds to Prudential from the sale of the real estate will not be sufficient to satisfy Debtors' obligations under the Promissory Note.

5. Prudential's Mortgage contains the following language:

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, Grantor hereby transfers, sets over and assigns to Grantee:

b. All other rents, issues and profits of the premises from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to Grantor, however, so long as Grantor is not in default hereunder, the right to reserve and retain such rents, issues and profits.

6. The Prudential Mortgage was filed for record in the Office of the Recorder, Champaign County, Ohio, on June 30, 1978 at 1:30 p.m. and was recorded in Volume 233, pages 436–442.

7. Prudential has filed no financing statements evidencing its lien interests in any crops ever grown by Debtors, including the 1986 crop.

8. Prior to the claims raised in the aforesaid state court proceeding, Prudential never sought to enforce its purported lien interest in crops grown by Debtors.

9. Since the filing of their Chapter 11 petition, debtors have executed no document or agreement with Prudential which granted Prudential an interest in crops grown post-petition.

10. No Order entered in this bankruptcy proceeding has granted Prudential an interest in Debtors' post-petition crops.

11. Miami Valley Production Credit Association ("PCA") holds a second mortgage on the real property subject to Prudential's mortgage as well as a first mortgage on two tracts of property owned by Debtors. In addition, PCA claims to hold a first mortgage on real property owned by Jesse and Wilma Smith.

12. PCA's mortgage upon Debtors' real property was filed on September 29, 1981 in the Office of the Recorder, Champaign County, Ohio, and recorded in Volume 247, pages 1048–1054.

13. PCA's mortgage contains a provision pursuant to which Debtors' grant and convey to PCA the "rents, issues

and profits .. and crops, thereon or hereafter erected thereon" associated with the real property subject to its mortgage.

14. PCA has filed the following financing statements with respect to interest in Debtors' crops.

a. Financing statement number 13626 on January 24, 1972, Champaign County Recorder covering "All crops of soy beans and corn" and "all harvested crops of small grains". Said financing statement was continued by continuation statements filed on December 16, 1976, December 16, 1981, and December 11, 1986.

b. Financing statement number 31533 filed June 2, 1982, Champaign County Recorder, covering "All crops of corn and soy beans" and "harvested and/or stored grain".

c. Financing statement number 33552 filed September 2, 1983, Champaign County Recorder, covering "All 1983 crops of corn, wheat and soy beans. All 1983 crops of corn nuts" and "All harvested and stored crops of grain and feed. All stored cornnuts."

d. Financing statement number 9126 filed September 6, 1983, Clark County Recorder, covering "All 1983 crops of corn, wheat and soy beans. All 1983 crops of cornnuts." "All harvested and stored crops of grain and feed. All stored cornnuts."

e. Financing statement number 15471 filed June 19, 1985, Clark County Recorder, covering "All crops growing or to be grown in 1985" and "All harvested crops and grain in storage and general intangibles arising from the sale thereof, for 1984 and 1985."

f. Financing statement number 36306 filed June 19, 1985, Champaign County Recorder, covering "All crops growing or to be grown in 1985" and "All harvested crops and grain in storage and general intangibles arising from the sale thereof, for 1984 and 1985."

15. That PCA was granted a lien upon Debtors' 1984 post-petition crop in conjunction with an Order granting Debtors' use of PCA's cash collateral.

16. That PCA was granted a lien upon Debtors' 1985 post-petition crop to secure the obligations of Debtors' to PCA as outlined in that certain Agreed Judgment Entry and Order entered in Contested Matter B on July 10, 1985.

17. Neither PCA nor Prudential extended Debtors' financing to produce, cultivate or harvest the 1986 crop.

18. That on April 18, 1986, Debtors signed a Note in favor of The Ohio Grain Company ("Ohio") in the amount of $100,000 or such lesser sum as might be outstanding after the aforesaid date.

19. To secure the repayment of the Ohio Note, Debtor Edmond L. Smith, executed and delivered to Ohio his certain security agreement pursuant to which it was intended that Ohio be granted a lien on Debtors' 1986 crop of corn and soybeans and the proceeds thereof.

20. Ohio filed financing statement number 37762 on May 9, 1986, with the Champaign County Recorder.

\* \* \* \* \* \*

Debtors filed their Petition in Bankruptcy on February 27, 1984.

At the hearing, Mr. Roland K. Schreiderer, Vice–President and Chief Financial Officer of The Ohio Grain Company testified that in March of 1986, he agreed on behalf of Ohio Grain to provide financing for Mr. Smith's 1986 crops. Some funds were advanced by Ohio Grain prior to the parties entering into a formal loan arrangement. On April 18, 1986, Mr. Smith signed a note in favor of Ohio Grain in the amount of $100,000 and executed a security agreement and financing statement purporting to grant to Ohio Grain a security interest in the 1986 crops. Mr. Smith did not receive $100,-000 upon the signing of the note. Instead, he was provided with the funds as he incurred expenses in his farming operations. Mr. Schreiderer characterized the loan arrangement as similar to a "line of credit." As of December 31,

1986, the balance on the note was $93,490.41.

Mr. Schreiderer testified that he was aware that Mr. Smith was a chapter 11 debtor in bankruptcy, but he did not request that the debtor obtain the bankruptcy court's approval of the loan by Ohio Grain. It was his belief that the loan was part of the debtors' normal course of business. Additionally, he stated that Ohio Grain had a similar arrangement with the debtors in 1985 and had been paid.

Finally, Mr. Schreiderer testified that the loan would not have been made without a crop lien being granted by the debtors.

Mr. Edmund L. Smith testified as follows:

—Mr. Schreiderer's testimony accurately reflected the financing arrangement with Ohio Grain;

—All supplies obtained with Ohio Grain's funds were used in the production of the 1986 crop;

—He would not have been able to produce a 1986 crop without Ohio Grain's financing;

—All of his 1986 crop is in storage;

—The crops consist of approximately 65,000 bushels of corn and 18,000 bushels of soybeans;

—The corn was planted in late April, 1986 and the soybeans in early May;

—Mr. Smith intended to grant a security interest to Ohio Grain in the crops on all of his parcels of land;

—Mr. Smith contracted to grow cornnuts for the Corn Nuts Corporation and seed corn for Landmark. Proceeds from these contracts (approximately $100,000) were used for the harvesting expenses of the 1986 corn and soybean crops.

—The sale of the 1986 crops will probably result in a loss.

## II. CONCLUSIONS OF LAW

A. *The Court below did not err in holding that PCA had no interest in Debtors' 1986 crop.*

 The Court below concluded that despite various security agreements held by PCA, by virtue of 11 U.S.C. § 552, "PCA has no interest in the Debtors' 1986 crops." The Bankruptcy Court concluded that as Debtors' 1986 crops were planted subsequent to the Debtors' Chapter 11 filing, they are after-acquired property within the meaning of 11 U.S.C. § 552. PCA asserts that there are two fundamental flaws in the Bankruptcy Court's conclusion that the Debtors' crops were after-acquired property within the meaning of § 552. *First,* PCA asserts that the lien claimed by PCA is not on "crops," but instead is on "stored grain." (Doc. # 7, at 7). *Second,* PCA contends that the lien claimed by PCA was granted to PCA prior to the commencement of the case, and thus the exception provided by 11 U.S.C. § 552(b) permits PCA's lien in stored grain to survive bankruptcy (Doc. # 7, at 7).

The post-petition effect of a security interest is governed by 11 U.S.C. § 552 which provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The Bankruptcy Court concluded that as the Debtors' crops were planted subsequent to the Chapter 11 filing, they were after-acquired property within the meaning of 11 U.S.C. § 552(a).

The argument put forth by PCA can be summarized as follows. In executing the various security agreements "the Debtors intended to grant, and Appellant intended to obtain, a lien on stored grain each and every year of the security agreement, as continued by law." (Doc. # 10). The various security agreements created a pre-petition security interest in Debtors' harvested and stored grain and this security interest covered all of Debtors' harvested and stored grain including harvested and stored grain to be acquired at some future date. Thus, as a pre-petition security interest existed, PCA argues that the exception provided by 11 U.S.C. § 552(b) is applicable in this case.

The Court first notes that it finds the Bankruptcy Court's characterization of PCA's pre-petition security interest as a pre-petition security interest in "crops" rather than "stored grain" to be irrelevant to the outcome of the Bankruptcy Court's decision. Regardless of whether the 1986 stored grain is characterized as a crop, or a farm product, or inventory, said grain constitutes *after-acquired property*. The argument set forth by PCA is fundamentally flawed in that PCA did *not* possess a pre-petition security interest in the 1986 crop/stored grain. Under Ohio law, a creditor can obtain a security interest in after-acquired property, but cannot do so unless and until "the debtor has rights in the collateral." *See* Ohio Rev.Code § 1309.14, 1309.15. *See also Sussen Rubber Co. v. Hertz,* 19 Ohio App.2d 1, 249 N.E.2d 65, 68 (1969) (In order for a security interest to attach in after-acquired property "the debtor must have rights in the collateral."). As the Debtors in this case did not (and in fact could not) have rights in the grain produc-

ed in 1986 on the date they filed their petition in bankruptcy (February 27, 1984), *no* security interest in said grain existed at the time of the commencement of the action.[2] Based upon the foregoing, the Court concludes that the Bankruptcy Court did not err in holding that PCA had no interest in Debtors' 1986 crop.

B. *The Court below did not prejudicially err in failing to consider the mortgage of PCA as granting it security.*

PCA further asserts that the Court below erred in failing to consider the mortgage of PCA as granting it a security interest in Debtors' 1986 crops. Basically, PCA contends that "its lien also attached by reason of its mortgage agreement." (Doc. # 7, at 8).

 While the Bankruptcy Court did err in failing to consider the mortgage of PCA as granting its security, this Court concludes that said error was in fact harmless. Just as Debtors' 1986 crop/stored grain is not subject to any lien resulting from the various security agreements entered into by the Debtors before the commencement of the case, it is not subject to any lien resulting from the mortgage entered into by the Debtors before the commencement of the case. Section 552 applies to security interests resulting from a mortgage as well as those governed by Article 9 of the U.C.C. *See In re Engstrom,* 33 B.R. 369, 373 (Bankr.D.S.D. 1983). *See also* H.R.Rep. No. 595, 95th Cong. 1st Sess. 376, *reprinted in* 1977 U.S.Code Cong. & Admin.News 6332; S.Rep. No. 989, 95th Cong., 2d Sess. 91, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5877.

If PCA is arguing that its mortgage agreement acts as a security agreement covering the 1986 crops, said argument fails to establish that PCA has any interest in the Debtors' 1986 crops. Even assuming

---

**2.** PCA appears to confuse the term "proceeds" with the term "after-acquired property." In summarizing its argument, PCA states that "[s]tored grain and the money it represents are proceeds from pre-petition pledge." (Doc. # 7, at 10). However, PCA did not argue that any of the stored grain in which PCA had a pre-petition

security interest or any proceeds from said grain were used to finance the 1986 crop. In order for 11 U.S.C. § 552(b) to apply, proceeds must stem from the property in which a creditor has a pre-petition security interest. Proceeds do not, as PCA would seem to indicate, stem from the security agreement itself.

*arguendo,* that PCA's real estate mortgage could serve as a security agreement, no security interest in the 1986 crops could have existed until *after* commencement of Debtors' bankruptcy action. As previously discussed, the 1986 crops are after-acquired property and thus, pursuant to 11 U.S.C. § 552(a) are not subject to any lien resulting from PCA's mortgage.

██ If PCA is claiming that it acquired any rights to the 1986 crops under Ohio's real estate law (i.e. that the 1986 crops are emblements), PCA's argument is without merit. Under Ohio real estate law, PCA could not acquire a lien upon the 1986 crops until it acquired actual or constructive possession of said crops. *See Connecticut Mutual Life Ins. Co. v. Shelly Seed Corp.,* 46 Ohio App. 548, 555, 189 N.E. 654 (1933). *See also Fourman v. Anderson,* 21 Ohio L.Abs. 222, 224 (Ohio Ct.App.1935) ("[I]n order to perfect its lien upon the wheat which was sowed before judgment and sale, The Union Central Life Insurance Co. should have exercised some right of possession or ownership over the crop."); 69 O.Jur.3d *Mortgages and Deeds of Trust* § 155 (1986). At the time of the commencement of this proceeding, PCA could not have "possessed" that which did not exist (i.e. the 1986 crops). Accordingly, as PCA did not possess the 1986 crops at that time, under Ohio real estate law, it could not have acquired a lien upon said crops at that time. Based upon the foregoing, the Court concludes that pursuant to 11 U.S.C. § 552(a), PCA has no interest in the Debtors' 1986 crops.

C. *The court below did not err in holding that Appellee Ohio Grain had an equitable lien on "net proceeds" of the 1986 crops.*

Finally, PCA asserts that the court below erred in holding that Ohio Grain Company had an equitable lien on "net proceeds" of the 1986 crops. Basically, PCA argues that 11 U.S.C. § 364 provides the sole method by which a creditor may obtain a post-petition security position in the property of the state. This Court finds PCA's argument to be without merit.

While the Sixth Circuit has yet to speak on this issue, there is ample authority to the effect that "[n]unc pro tunc approval of transactions not initially authorized is well within the equitable power of a court of bankruptcy...." *In re Alafia Land Development Corp.,* 40 B.R. 1, 4 (M.D.Fla. 1984). *See generally In re London, Inc.,* 70 B.R. 63, 65, 66 (E.D.Wisc.1987); *In re Lindo's Tours,* 55 B.R. 475, 478 (M.D.Fla. 1985). Several courts have adopted the following test:

> A nunc pro tunc order validating post-petition borrowing should not be entered unless the judge "is confident that he would have authorized [the borrowing] if timely application had been made, and unless, in addition, he is reasonably persuaded that the creditors have not been harmed by continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction."

*In re London, Inc.,* 70 B.R. at 65–66 (quoting *In re American Cooler Co., Inc.,* 125 F.2d 496, 497 (2d Cir.1942)). The court below was not required to utilize this test and did not do so. However, the Bankruptcy Court did *not* ignore the impact of Ohio Grain Company's loan upon Debtors' other creditors.

██ As noted by the court below "this is not a case where the debtor has attempted to grant a lien to a creditor in previously unencumbered property at the expense of the general creditors. The fundamental fact is that Ohio Grain's loan did not just preserve the bankruptcy estate, but in fact 'created' a portion of that estate." In the absence of Ohio Grain Company's loan, the estate would not have possessed the 1986 crop. Despite the failure of Debtors and Ohio Grain Company to follow the proper procedures in gaining court approval for the loan, this Court agrees with the Bankruptcy Court that it would be unjust to permit Debtors' other creditors to profit from Ohio Grain Company's mistake. This Court concludes that the Bankruptcy Court

has sufficiently protected Debtors' other creditors from any potential loss on the 1986 crops by limiting Ohio Grain Company's equitable lien to "net proceeds." The only property in which Ohio Grain Company has acquired a lien is property which was "created" as a result of Ohio Grain Company's loan.

Based upon the foregoing, the Court concludes that the court below did not err in holding that Appellee Ohio Grain Company had an equitable lien on "net proceeds" of the 1986 crops.

## III. CONCLUSION

As this Court has determined that Appellant PCA's three assignments of error are without merit, the Court concludes that the Bankruptcy Court's Decision and Entry must be and hereby is affirmed.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.