**In re HRC JOINT VENTURE, an Ohio Joint Venture, Debtor.**

**Bankruptcy No. 94-11085.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 16, 1994.

Thomas C. Scott, Columbus, OH, Susan L. Rhiel, Philomena S. Ashdown, Cincinnati, OH for debtor.

Claude D. Montgomery, New York City, Thomas C. Kilcoyne, Cincinnati, OH, for Hyatt Corp.

John A. Schuh, Mark C. Vollman, Cincinnati, OH, for City of Cincinnati.

Peter L. Borowitz, New York City, Jay A. Rosenberg, Lawrence R. Elleman, Cincinnati, OH for TIAA.

## DECISION RE TEACHERS INSURANCE and ANNUITY ASSOCIATION MOTION FOR ADEQUATE PROTECTION

BURTON PERLMAN, Bankruptcy Judge.

The Chapter 11 debtor in this case is the owner of the building in which the Hyatt Regency Cincinnati hotel is housed and operated. Permanent financing for the construction of the building was provided by Teachers Insurance and Annuity Association of America ("TIAA"). Now before the court is a motion by TIAA for adequate protection, the motion raising the issue of the rights of TIAA to assert a security interest in certain funds due to debtor.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (M).

The relevant facts are as follows. In December, 1986, TIAA loaned HRC $41 million to finance the construction of the building housing the Hyatt hotel in Cincinnati. In addition to the Hyatt hotel, there is also retail space in the building which is leased to various enterprises. The land on which the hotel stands is owned by the City of Cincinnati, and the debtor is a long-term lessee. In return for the loan, TIAA received a note, a

mortgage on HRC's leasehold estate on the land, and a mortgage on the improvements on the land. In addition, the City of Cincinnati agreed to subordinate its fee simple interest in the land to the lien of the mortgage. The City of Cincinnati and State of Ohio also provided financing and hold mortgages junior to TIAA's.

HRC executed an "Open End Mortgage Deed and Security Agreement" (the "Mortgage"), in which it mortgaged and granted to TIAA a security interest in, *inter alia*, (1) "[a]ll rents, issues, proceeds and profits accruing and to accrue" to HRC from the hotel, and (2)

> [a]ll present or future rights of [HRC] in and to all operating revenues derived from the operation of the hotel . . ., including, without limitation, revenues from guest rooms and suites, banquet rooms, meeting rooms, restaurants, bars, cocktail lounges, retail space, health club facilities, parking facilities and any other operations of that hotel.

In addition to filing the mortgage, TIAA also filed UCC financing statements to ensure perfection of the mentioned security interests.

While HRC caused the building of the structure where the hotel is housed, and is the owner of that structure, it does not operate the hotel. Operation of the hotel is by the Hyatt Corporation ("Hyatt") pursuant to a Management Agreement to which debtor and Hyatt are the parties. That Agreement provides that debtor is to build a first-class hotel to specifications approved by Hyatt. The Management Agreement includes Section 4.3, Remittances to Owner:

> Contemporaneously with furnishing the monthly statement for each calendar month pursuant to Section 7.4 hereof, Hyatt shall remit to Owner out of the operating accounts an amount (the "Owner's Remittance Amount") by which the total funds then in the operating accounts exceed (i) the tentative monthly installment of Hyatt's Basic Fee, (ii) subject to clause (b) of Section 4.2.2 hereof, the tentative monthly installment of Hyatt's contingent Incentive Fee, (iii) the supplemental payment provided in Section 4.8 hereof,

and (iv) the Working Capital Standard (as hereinafter defined). Each Remittance shall be paid to Owner at Owner's address then in effect hereunder for receipt of notices hereunder by Owner, or at such other place as Owner may, from time to time, designate in a notice to Hyatt.

The term "remittances" where hereafter used will refer to such payments due debtor by Hyatt.

In addition to the mortgage-related security arrangements mentioned earlier, TIAA entered into an "Assignment and Security Agreement" with debtor, which impacts the rights of debtor under the Management Agreement. The UCC Financing Statements in the words of a TIAA brief "declare that the security interests cover '[a]ll of Debtor's rights under the Operating Agreement.'" TIAA further clarified in its brief with: "In the Financing Statements, the term 'Operating Agreement' . . . mean[s] that certain Management Agreement between Debtor and Hyatt Corporation dated July 24, 1981, as supplemented and amended . . . and as the same may from time to time be further supplemented or amended."

In addition, the Assignment and Security Agreement provides in pertinent part:

> \*   \*   \*   \*   \*   \*

> 4. *Right of Borrower.* So long as Borrower shall not be in default under any of the Loan Documents or the Operating Agreement, Borrower shall be entitled to collect, but not more than fifteen days prior to accrual, and to retain all monies due it under the Operating Agreement.

> \*   \*   \*   \*   \*   \*

> 6. *Default by Borrower.* Upon the occurrence of any default by Borrower under the Loan Documents, Assignee may, without affecting any of its rights or remedies against Borrower under any other instrument, document or agreement, exercise its rights under this instrument as Borrower's attorney-in-fact or in any other manner permitted by law, and in addition Assignee shall have and possess, without limitation, any and all rights and remedies of a secured party under the Uniform Commer-

cial Code of the State of Ohio, or otherwise provided at law or in equity.

7. *Creation of Security Interest.* Borrower hereby grants to Assignee a security interest in all of Borrower's present and future accounts receivable, and other present and future rights of Borrower to payment, for room rentals, food and beverage operations and other amounts with respect to Borrower's interest in the Land or the Hotel and all proceeds thereof, whether or not yet earned by performance, and whether or not evidenced by an instrument, including but not limited to all present and future accounts (including, without limitation, operating accounts and the Reserve Account established pursuant to the Operating Agreement) arising from the operation of the Land and the Hotel and all present and future rights to payment from any consumer credit or charge card organization or entity (such as the organizations or entities which sponsor or administer the American Express, Carte Blanche, Diners Club, Visa and Master Charge/Master Card cards), and including all such accounts receivable and other rights and accounts now existing or hereafter created, and all substitutions therefor and proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof, as additional security for all indebtedness and the performance of all obligations secured by the Loan Documents. Borrower hereby unconditionally and irrevocably authorizes Hyatt, after Hyatt's receipt from Assignee of a copy of a notice by Assignee to Borrower of a default on Borrower's part under the Loan Documents, to act in accordance with any and all instructions received from Assignee with respect to the holding of any such accounts receivable, other rights to payment, and the proceeds thereof (including cash as described hereinabove) in trust for the benefit of Assignee and to turn the same over to Assignee at such time as Assignee shall direct.

\*　　\*　　\*　　\*　　\*　　\*

Pursuant to the above-quoted paragraph 7 of the Assignment and Security Agreement, after default by debtor, TIAA gave notice to Hyatt to withhold further payment of remittances to debtor and instead to segregate the remittances. The resulting segregated fund includes the "Disputed Post–Petition Cash Collateral" referred to in Second Stipulated Order Temporarily Granting Authority to Use Cash Collateral and Providing Adequate Protection (Doc. 55).

The issue which is presented to the court is whether these prepetition agreements suffice to give TIAA a security interest in the funds being held and segregated by Hyatt pursuant to the TIAA notice. Pursuant to that notice, Hyatt began withholding remittances prepetition and has continued to do so postpetition. The present motion of TIAA presents the question whether TIAA has a security interest in the postpetition remittances included in such funds. Debtor asserts that 11 U.S.C. § 552(a) bars such a contention by TIAA. Section 552 in its entirety reads:

§ 552. **Postpetition effect of security interest**

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interested created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and

a hearing and based on the equities of the case, orders otherwise.

In this section, it was clearly the intent of Congress to cut off as of the date of the petition, security interests created prepetition so far as they extend to after acquired property, that is, property acquired postpetition. At § 552(b), exceptions are stated, for it is there provided that "proceeds, product, offspring, rents, or profits" of the primary property comprising the collateral, may be the subject of a persisting postpetition security interest. TIAA contends that its security interest in the funds in question persist postpetition because they are "rents" or "proceeds."

After a review of the several agreements entered into by the parties which have been discussed above, we have reached the conclusion that the original formulation of the question before the court by the parties is incorrect. That formulation asked the court to decide whether hotel revenues are to be regarded as "rents" or "proceeds" for purposes of § 552(b). That formulation is incorrect because there is a complicating factor in the present case which existed in neither *In re Days California Riverside, Ltd. Partnership*, 27 F.3d 374 (9th Cir.1994), nor *In re T–H New Orleans, Ltd. Partnership*, 10 F.3d 1099 (5th Cir.1993), recent Court of Appeals decisions to which we are referred by TIAA. The complicating factor is that hotel revenues never came to debtor. Instead, pursuant to the terms of the Management Agreement between debtor and Hyatt, all revenues from the operation of the building owned by debtor were received by Hyatt. What debtor did receive was the remittances which we have earlier defined, determined in accordance with the terms of the Management Agreement. The fund rights to which we here adjudicate arose specifically when TIAA directed Hyatt not to pay remittances to debtor. Thus, it is a question of rights to remittances pursuant to the Management Agreement which must be determined, not rights to hotel revenues.

When the possibility occurred to us that the question of rights in remittances being withheld postpetition turned not on how the court should characterize hotel revenues, but rather the proper characterization of payments due debtor under its Management Agreement with Hyatt, we so advised counsel. Both parties then submitted supplemental briefs.

Upon further consideration, we conclude that indeed the "remittances" here in question are different from hotel revenues. It was suggested that this view was incorrect, that under the Management Agreement, Hyatt is merely the agent of debtor, and, presumably, the argument is that the hotel revenues collected by Hyatt passed through the procedure created by the Management Agreement without a change in their character. The Management Agreement, however, is no mere agency agreement. It is an agreement between two principals, a property owner and a hotel operator. The Agreement is the latest, at least for the 1980's when it was entered into, development in the evolution of legal relationships between property owners and hotel operators. That evolution enabled operators to free themselves of the limitations on their activities which earlier were imposed when the capital of hotel operators had been tied up in the ownership of real estate. Anthony B. Kuklin & K.C. McDaniel, "Hotel Management Agreements 1993—'The World Turned Upside Down,'" 877 A.L.I.–A.B.A. Course of Study 517, 519–21 (1994). There are very extensive detailed obligations and rights on the part of both parties in the Management Agreement which take the Management Agreement out of the category of agency agreement.

We therefore hold that the question before us does not involve decision as to whether postpetition hotel revenues can constitute collateral of TIAA. Rather is the question whether postpetition remittances due debtor by Hyatt pursuant to the Management Agreement may do so. It is at once obvious that this formulation removes from consideration whether the collateral under examination is rent for purposes of § 552(b), for clearly it is not. The only pertinent § 552(b) exception remaining is that of proceeds; whether postpetition remittances constitute proceeds of a prepetition interest.

We turn, then, to the question of interests in postpetition remittances. TIAA

contends, first, that by the Assignment and Security Agreement it held a security interest in remittances prepetition, and, second, that its security interest continued postpetition. Debtor contests both these positions.

Debtor, attacking the first contention, calls to our attention legal authority for the proposition that the security interest of a secured party is limited to the specific items enumerated in the controlling agreement. *See Mitchell v. Shepard Mall State Bank*, 458 F.2d 700, 704 (10th Cir.1972). Applying this principle, debtor in its argument refers to § 7 of the Assignment and Security Agreement. That section is entitled "Creation of a Security Interest." In the paragraph so entitled, debtor points out that there is no specific reference to "owner's remittance amounts," nor do the words "general intangibles" appear. Further characterizing its position, debtor says that while § 7 does by its terms extend to "accounts," the remittances are not accounts, but rather are "general intangibles" under UCC terminology and these are not expressly enumerated. By this reasoning, debtor concludes that TIAA never had a security interest in postpetition remittances.

TIAA responds to this position by pointing out that § 7 of the Assignment and Security Agreement is not the only place where a security interest is conveyed. Section 1 of that Agreement was also intended to serve that purpose.

Our review of the documentary evidence persuades us that it was the intention of the parties that TIAA be given a security interest in the remittances to be made to the debtor pursuant to the Management Agreement. The position urged by debtor is unduly restrictive and overly technical. We hold, therefore, that the Assignment and Security Agreement did create a security interest in TIAA in the remittances to be made by Hyatt to the debtor under the Management Agreement. That, of course, is a statement of the relationship between the parties and their respective rights at the time that the several agreements were entered into, prior to the time that a bankruptcy petition was filed by this debtor.

■ The ultimate question, however, is whether that security interest continued after the bankruptcy case was filed, or whether it was annulled by operation of § 552(a). The starting point for our analysis of this issue is a reference to the statement upon which TIAA relies in asserting a security interest in remittances. The precise language is that TIAA has a security interest in "[a]ll of Debtor's rights under the Operating Agreement." The financing statement does not say, and TIAA does not contend, that it is secured by the contract, the Management Agreement, between debtor and Hyatt. It is secured by something quite different, "Debtor's rights" under that Agreement. This distinction is essential in a correct analysis of the rights of the parties. If TIAA were secured by the contract, it might justifiably assert that when that Agreement was entered into prepetition a right was created in all payments due debtor under the Agreement, and it then could logically argue that such payments were proceeds of a prepetition right.

That, however, is not TIAA's security interest. Its security interest was to debtor's *rights under the Management Agreement.* While there were a number of such rights, the one which concerns us here is the right to remittances. Debtor's right to remittances arose each month. We do not dispute the position of TIAA that the payments themselves were proceeds. Contrary to the contention of TIAA, however, each payment comprised proceeds of a right of debtor which arose only postpetition. We conclude, therefore, that § 552(a) bars any security interest by TIAA in postpetition remittances.

Authority in this district supports the proposition that TIAA's secured interest in remittances arose only postpetition. Some years ago in *In re Gross–Feibel Co., Inc.*, 21 B.R. 648 (Bankr.S.D.Ohio 1982), this court stated the proposition which we hold controls here:

... Simply stated, "[p]roceeds coverage, but not after acquired property clauses, are valid under title 11." 124 Cong.Rec. H11, 097–98 (Sept. 28, 1978) (remarks of Rep. Edwards); S17,414 (Oct. 6, 1978) (remarks of Sen. DeConcini). It must be

emphasized that the exception to subsection (a) set forth in subsection (b) refers to proceeds of "property of the debtor acquired before the commencement of the case...." Therefore, proceeds of collateral may be held to be secured by a prepetition security interest only if the collateral which produces the proceeds was "acquired" by the debtor prior to the commencement of the case. *See 4 Collier on Bankruptcy,* ¶ 552.02, at p. 552–5 (15th Ed.1981).

In the case at bar, the "collateral which produces the proceeds" was only to be "acquired" by debtor each month. For months after the filing of the bankruptcy case it cannot be said that the remittance relates to property acquired "before the commencement of the case."

Another relevant statement to the same effect in this district is to be found in *In re Smith,* 119 B.R. 558, 564 (S.D.Ohio 1989), where the court said:

> ... Regardless of whether the 1986 stored grain is characterized as a crop, or a farm product, or inventory, said grain constitutes *after-acquired property.* The argument set forth by PCA is fundamentally flawed in that PCA did *not* possess a prepetition security interest in the 1986 crop/stored grain. Under Ohio law, a creditor can obtain a security interest in after-acquired property, but cannot do so unless and until "the debtor has rights in the collateral." *See* Ohio Rev.Code § 1309.14, 1309.15. *See also Sussen Rubber Co. v. Hertz,* 19 Ohio App.2d 1, 249 N.E.2d 65, 68 (1969) (In order for a security interest to attach in after-acquired property "the debtor must have rights in the collateral.") As the Debtors in this case did not (and in fact could not) have rights in the grain produced in 1986 on the date they filed their petition in bankruptcy (February 27, 1984), *no* security interest in said grain existed at the time of the commencement of the action.

The principle applied in the *Smith* case applies here as well.

The rights of TIAA in postpetition remittances under the Management Agreement is directly analogous to the more common situation where a creditor is secured by a debtor's accounts receivable. It is beyond argument that a security interest in accounts receivable is cut off by § 552(a) upon a bankruptcy filing. *In re Bering Trader, Inc.,* 944 F.2d 500, 502 (9th Cir.1991); *In re Cross Baking Co.,* 818 F.2d 1027, 1029, 1032 (1st Cir.1987); *In re Corpus Christi Hotel Partners, Ltd.,* 133 B.R. 850, 854, 856 (Bankr.S.D.Tex.1991); *In re Texas Tri–Collar, Inc.,* 29 B.R. 724, 726–27 (Bankr.W.D.La.1983); *In re All–Brite Sign Serv. Co.,* 11 B.R. 409, 414 (Bankr. W.D.Ky.1981). Proceeds of a postpetition account receivable do not fall within the § 552(b) proceeds exception because there is no interest in the right, in the account receivable, created prepetition where it is only postpetition acts which generated that account receivable. So here it is only postpetition acts which generated the collateral of TIAA in question, debtor's right to remittances each month under the Management Agreement.

Because the security interest of TIAA in remittances due the debtor pursuant to the Management Agreement were cut off as of the date of filing bankruptcy, the present motion of TIAA, its motion for adequate protection, must be denied.